803 A.2d 102

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
DAVID GOODWIN, DEFENDANT–RESPONDENT.

Argued April 30, 2002—Decided August 6, 2002.

584

586

*Susan B. Gyss*, Assistant Prosecutor, argued the cause for appellant (*Fred J. Theemling, Jr.*, Hudson County Prosecutor, attorney).

*Frank J. Pugliese*, Assistant Deputy Public Defender, argued the cause for respondent (*Peter A. Garcia*, Acting Public Defender, attorney).

*Erik W. Daab*, Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Peter C. Harvey*, Acting Attorney General, attorney).

*Lawrence S. Lustberg* and *Shavar D. Jeffries* submitted a letter brief on behalf of *amicus curiae* Association of Criminal Defense Lawyers of New Jersey (*Gibbons, Del Deo, Dolan, Griffinger & Vecchione*, attorneys).

The opinion of the Court was delivered by

ZAZZALI, J.

This appeal concerns whether the second petition for post-conviction relief brought by defendant, David Goodwin, is barred by *Rule* 3:22–12. We also must consider whether the nature of the allegations in his petition for post-conviction relief are sufficient to require relaxation of the five-year time bar.

Eight years after he had been sentenced on his convictions of felony murder, armed robbery and unlawful possession of a hand-

gun, defendant filed this second petition for post-conviction relief. His petition was filed well beyond the five-year deadline established by *Rule* 3:22–12 and is thus time-barred. This case does not present excusable neglect under *Rule* 3:22–12 such that relaxation of the procedural bar is justified. Nor do the interests of justice require relaxation.

I

On February 11, 1989, defendant David Goodwin drove Ronald Henderson, his cousin Willie Henderson, and Timothy White to Hoboken, New Jersey. On that day, Ronald Henderson shot James Wheeler to death. In his taped statement to police, Henderson stated that defendant told him to shoot Wheeler. Henderson later testified at defendant's trial under a grant of testimonial use immunity and denied the portion of his taped statement to the effect that defendant ordered him to shoot Wheeler. The relevant portion of his taped statement was played to the jury and admitted as substantive evidence.

Henderson also testified that defendant gave him the gun used to shoot Wheeler and that, prior to the shooting, both defendant and White identified Wheeler as they drove past him on the street. According to Henderson, he and his cousin then exited defendant's car and approached Wheeler. A brief struggle ensued, resulting in the fatal shooting of Wheeler. Henderson testified that he and his cousin fled the scene and met defendant who drove them to a mall. At that point, Henderson returned the gun to defendant and observed him put the gun in his trunk. Henderson testified that he and defendant communicated by "walkie-talkie" during the shooting and that defendant was supposed to pay him $1,500 for shooting Wheeler.

Wheeler's cousins, BaShawn Darden and Herman Darden, also testified on behalf of the State. Both witnesses testified that, immediately before the shooting, they observed defendant's car driving slowly down the street. They also testified that they observed White in defendant's car pointing in Wheeler's direction.

Both BaShawn and Herman testified that they knew and recognized defendant.

Approximately thirty minutes after the shooting occurred, Officers John Alvarez and Dennis Figueroa, who were on patrol in a marked police car, received a transmission from headquarters "that they were looking for a gray four-door vehicle wanted in connection with a homicide that had occurred approximately one-half hour to an hour before in the Projects area." The description, based on information provided by eyewitnesses at the scene of the crime, included the vehicle's license plate number. Officer Figueroa had been at the scene of the incident and was told by two informants that defendant was driving the car observed at the time of the shooting.

Shortly thereafter, the officers observed defendant driving a car matching the description radioed to them from police headquarters. Officers Alvarez and Figueroa subsequently stopped the vehicle, which contained four men including defendant. The officers patted down the occupants and secured them in two police vehicles. According to police testimony, defendant was arrested when his vehicle was stopped. Before defendant and the other occupants of the car were transported to police headquarters, Officer Alvarez entered the car and observed a green and white cigarette box on the floor in the back. Officer Alvarez opened the box and discovered two vials of cocaine.[1] Shortly thereafter, Officer Alvarez observed leather tassels hanging from the underside of the dashboard. When he pulled at the tassels, a black leather pouch dropped down. Officer Alvarez opened the pouch and found two .38 caliber bullets.

At headquarters, the police informed defendant of his *Miranda* rights. Sergeant Paul DiMartino and Investigator Patrick Sor-

---

[1] Prior to trial, the State moved to admit the cocaine discovered in defendant's vehicle as evidence that the murder of Wheeler was drug-related. The court denied the State's motion, finding an insufficient nexus between the drugs obtained from defendant's vehicle and the homicide.

rentino then questioned defendant. Initially, defendant denied any knowledge of the shooting. Investigator Bartucci subsequently took over the questioning and readministered defendant's *Miranda* rights. Defendant then gave a taped statement. At that point, defendant admitted his involvement in the shooting, but claimed that White had hired the Hendersons to rob or shoot Wheeler because Wheeler had been robbing White's drug dealers. Defendant admitted that he drove the Hendersons to and from the scene of the crime, but stated that he had not planned to do so. Later that night, defendant told the police where he had hidden the gun used in the shooting. That gun was determined to be the gun used to shoot Wheeler.

Defendant testified at trial that he had no prior knowledge of the plan to rob or shoot Wheeler and that he had spoken to no one about such a plan. He claimed that he told the Hendersons to get out of his car and that he did not arrange to meet them after the shooting. Defendant testified that he had parked his car to talk to his cousin when the Hendersons happened by and asked him for a ride back to Newark. Although he admitted that there were "walkie-talkies" in his car, he denied that he used them during the shooting. That testimony was contradicted when his earlier taped statement was played for the jury.[2]

In October 1990, the jury convicted defendant of felony murder, armed robbery, and unlawful possession of a handgun. On November 30, 1990, defendant was sentenced to an aggregate sentence of thirty years imprisonment with a thirty-year parole disqualifier. In an unpublished opinion, the Appellate Division

---

[2] Defense counsel filed a motion to suppress his statement, alleging that, prior to questioning defendant, the investigating officers failed to advise him of his rights under *Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966). The court denied the motion, finding that defendant was, in fact, informed of his *Miranda* rights, and that his waiver of those rights was knowing, voluntary, and intelligent. On direct appeal, the Appellate Division affirmed the trial court's ruling and we denied certification.

affirmed defendant's convictions in March 1993. We denied certi-
fication. *State v. Goodwin,* 134 *N.J.* 475, 634 *A.*2d 522 (1993).

In January 1994, defendant filed a timely *pro se* petition for
post-conviction relief, alleging ineffective assistance of trial and
appellate counsel. The petition was dismissed without a hearing
or appointment of counsel. Defendant filed a motion for reconsid-
eration, which was granted, and counsel was appointed. After
oral argument, the court again dismissed the petition on the
ground that defendant failed to meet even the first prong of the
test for ineffective assistance of counsel. The Appellate Division
affirmed the dismissal, finding that defendant failed to state a
*prima facie* claim of ineffective assistance of counsel. Once again,
we denied defendant's petition for certification. *State v. Goodwin,*
153 *N.J.* 214, 708 *A.*2d 64 (1998).

On August 4, 1998, defendant filed a second petition for post-
conviction relief, again alleging ineffective assistance of trial coun-
sel. After a hearing on the petition in July 1999, the court
dismissed defendant's petition based on *Rule* 3:22–12, *Rule* 3:22–4,
and *Rule* 3:22–5. The trial court explained that defendant previ-
ously had litigated the claim of ineffective assistance of counsel
and that even if defendant had not raised the same claim his
petition was time-barred and defendant had failed to demonstrate
excusable neglect. The court also briefly addressed the merits of
defendant's petition and concluded that the search of defendant's
vehicle was supported by probable cause.

In an unpublished opinion, the Appellate Division reversed the
dismissal of the second petition and remanded the matter to the
trial court for an evidentiary hearing. The court found that
although defendant filed his second petition for post-conviction
relief beyond the limitations period, the delay was excusable due
to ineffective assistance of counsel. Additionally, the court found
that the issue presented raised substantial constitutional questions
and thus the "interests of justice" required a relaxation of the five-
year time bar. Finally, the Appellate Division found that *Rule*
3:22–5, which bars a defendant from raising claims that already

have been adjudicated, did not prevent defendant from proceeding. The court reasoned that defendant asserted a specific constitutional issue that had yet to be adjudicated, namely, that defendant's constitutional rights had been violated when he received ineffective assistance of counsel.

We granted certification. 171 *N.J.* 40, 791 *A.*2d 219 (2002). We also granted the motions of the Attorney General and the Association of Criminal Defense Lawyers of New Jersey to participate as *amicus curiae.*

## II

### A

"Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus." *State v. Preciose,* 129 *N.J.* 451, 459, 609 *A.*2d 1280 (1992). *Rule* 3:22–2 sets forth four grounds for post-conviction relief: (a) "substantial denial in the conviction proceedings" of a defendant's state or federal constitutional rights; (b) a sentencing court's lack of jurisdiction; (c) an unlawful sentence; and (d) any habeas corpus, common-law, or statutory grounds for a collateral attack. A petitioner must establish such relief by a preponderance of the credible evidence. *Preciose, supra,* 129 *N.J.* at 459, 609 *A.*2d 1280; *State v. Mitchell,* 126 *N.J.* 565, 579, 601 *A.*2d 198 (1992).

A number of procedural bars to post-conviction relief exist "in order to promote finality in judicial proceedings." *State v. McQuaid,* 147 *N.J.* 464, 483, 688 *A.*2d 584 (1997). For example, a defendant may not employ post-conviction relief to assert a new claim that could have been raised on direct appeal, *Rule* 3:22–4, or to relitigate a claim already decided on the merits, *Rule* 3:22–5. At issue in this appeal is *Rule* 3:22–12, which establishes a five-year time limit for petitioning for post-conviction relief. Specifically, *Rule* 3:22–12 provides that

[a] petition to correct an illegal sentence may be filed at any time. No other petition shall be filed pursuant to this rule more than 5 years after rendition of the

judgment or sentence sought to be attacked unless it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect.

The five-year period commences from the time of the conviction or the time of the sentencing, whichever the defendant is challenging. *State v. Afanador*, 151 *N.J.* 41, 52, 697 *A.2d* 529 (1997). The time bar should be relaxed only "under exceptional circumstances" because "[a]s time passes, justice becomes more elusive and the necessity for preserving finality and certainty of judgments increases." *Ibid.* We consistently have recognized the importance of adhering to this procedural bar:

> There are good reasons for [*Rule* 3:22–12]. As time passes after conviction, the difficulties associated with a fair and accurate reassessment of the critical events multiply. Achieving 'justice' years after the fact may be more an illusory temptation than a plausibly attainable goal when memories have dimmed, witnesses have died or disappeared, and evidence is lost or unattainable.... Moreover, the Rule serves to respect the need for achieving finality of judgments and to allay the uncertainty associated with an unlimited possibility of relitigation. The Rule therefore strongly encourages those believing they have grounds for post-conviction relief to bring their claims swiftly, and discourages them from sitting on their rights until it is too late for a court to render justice.
>
> [*Mitchell, supra*, 126 *N.J.* at 575–76, 601 *A.2d* 198.]

However, a court may relax the time bar if the defendant alleges facts demonstrating that the delay was due to the defendant's excusable neglect or if the "interests of justice" demand it. *Id.* at 576, 601 *A.2d* 198. "If the petitioner does not allege sufficient facts, the Rule bars the claim." *Ibid.* In other words, a petitioner must offer something more than a "bare allegation." *Id.* at 580, 601 *A.2d* 198. In determining whether a defendant has asserted grounds sufficient for relaxation of the *Rule*, a court "should consider the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an 'injustice' sufficient to relax the time limits." *Afanador, supra*, 151 *N.J.* at 52, 697 *A.2d* 529 (citing *Mitchell, supra*, 126 *N.J.* at 580, 601 *A.2d* 198).

In this matter, defendant was convicted in October 1990 and sentenced on November 30, 1990. He filed his first petition for post-conviction relief in January 1994. His second petition for post-conviction relief was filed on August 4, 1998, nearly eight

years after the date of his conviction, and almost three years beyond the five-year time bar of *Rule* 3:22–12. Therefore, defendant's petition is time-barred.

Defendant, however, contends that there exists excusable neglect for his failure to file a timely petition. Defendant claims that the delay in the filing of his second petition for post-conviction relief is attributable to his counsel's failure to "adequately represent" him. Defendant further asserts that the interests of justice require a relaxation of the time bar because his petition raises substantial constitutional questions in respect of ineffective assistance of counsel and the legality of his arrest, the search of his vehicle, and his interrogation.

■ Defendant has failed to allege facts demonstrating that the delay in the filing of his petition was due to excusable neglect. Further, defendant's assertion that his trial counsel and subsequent counsel, a total of three different attorneys, were ineffective is insufficient to demonstrate excusable neglect. See *State v. Dugan*, 289 *N.J.Super.* 15, 21, 672 *A.*2d 1240 (App.Div.1996) (refusing to relax five-year time bar because defendant's ineffective assistance of counsel claim "rest[ed] on factual allegations outside the trial record that would require an evidentiary hearing relating to the conduct of his trial held more than nine years ago"). Defendant does not explain how his trial counsel's failure to file a motion to suppress, and his subsequent counsel's failure to raise the issue of trial counsel's alleged ineffectiveness, contributed to the extensive delay in the filing of his petition for post-conviction relief. We also conclude that, in any event, the claims set forth in the petition lack merit, and therefore defendant has failed to raise a substantial constitutional question.

Moreover, the prejudice to the State in relitigating the case against defendant cannot be understated. Defendant was convicted and sentenced approximately twelve years ago. As indicated by the State at oral argument, two of the officers involved in the case, Investigators Bartucci and Sorrentino, have since retired. Also, one of the State's key witnesses, Ronald Henderson, has

been sentenced and is currently serving his term of imprisonment. According to the State, once a co-defendant is sentenced, to convince that co-defendant to testify again is extremely difficult because he or she already has received the benefit of a plea bargain.

## B

Notwithstanding the fact that defendant's petition is time-barred and that defendant has failed to allege or establish excusable neglect, we conclude that defendant's petition fails on the merits.

Courts ordinarily grant evidentiary hearings to resolve ineffective assistance of counsel claims where the defendant has presented a *prima facie* claim in support of post-conviction relief. *Preciose, supra,* 129 *N.J.* at 462, 609 *A.*2d 1280. To establish a *prima facie* claim of ineffective assistance of counsel, a defendant must demonstrate a reasonable likelihood of succeeding under the test set forth in *Strickland v. Washington:*

> [T]he defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown of the adversary process that renders the result unreliable.
>
> [466 *U.S.* 668, 687, 104 *S.Ct.* 2052, 2064, 80 *L.Ed.*2d 674, 693 (1984); see also *State v. Fritz,* 105 *N.J.* 42, 58, 519 *A.*2d 336 (1987) (holding that defendants must satisfy *Strickland* test to show violation of Article 1, paragraph 10 of New Jersey Constitution).]

According to the first prong of the test, counsel's performance must be reviewed with "extreme deference ...", requiring 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]' " *Fritz, supra,* 105 *N.J.* at 52, 519 *A.*2d 336 (quoting *Strickland, supra,* 466 *U.S.* at 689, 104 *S.Ct.* at 2065, 80 *L.Ed.*2d at 694). In that respect, courts are required to make "every effort ... to eliminate the

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland, supra,* 466 *U.S.* at 689, 104 *S.Ct.* at 2065, 80 *L.Ed.*2d at 694.

Under the second prong of the test, prejudice is not presumed and must be proven by the defendant. *Fritz, supra,* 105 *N.J.* at 52, 519 *A.*2d 336 (citing *Strickland, supra,* 466 *U.S.* at 692, 104 *S.Ct.* at 2067, 80 *L.Ed.*2d at 696–97). "Specifically, a defendant alleging [ineffective assistance of counsel] must show that there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Ibid.* (quoting *Strickland, supra,* 466 *U.S.* at 694, 104 *S.Ct.* at 2068, 80 *L.Ed.*2d at 698).

In certain contexts, such as the "[a]ctual or constructive denial of the assistance of counsel altogether," prejudice is presumed. *Strickland, supra,* 466 *U.S.* at 692, 104 *S.Ct.* at 2067, 80 *L.Ed.*2d at 696; see also *United States v. Cronic,* 466 *U.S.* 648, 658, 104 *S.Ct.* 2039, 2046, 80 *L.Ed.*2d 657, 667 (1984) (holding that in some ineffective assistance cases, prejudice to defendant may be presumed). "Failure to file a suppression motion, however, is not one of those circumstances." *State v. Fisher,* 156 *N.J.* 494, 501, 721 *A.*2d 291 (1998) (citing *Kimmelman v. Morrison,* 477 *U.S.* 365, 384, 106 *S.Ct.* 2574, 2588, 91 *L.Ed.*2d 305, 325 (1986)). "Additionally, when counsel fails to file a suppression motion, the defendant not only must satisfy both parts of the *Strickland* test but also must prove that his [or her] Fourth Amendment claim is meritorious." *Ibid.* (citing *Kimmelman, supra,* 477 *U.S.* at 375, 106 *S.Ct.* at 2583, 91 *L.Ed.*2d at 319).

In analyzing trial counsel's performance, we examine the law as it stood at the time of counsel's actions, not as it subsequently developed. *Ibid.* (citing *Kimmelman, supra,* 477 *U.S.* at 384, 106 *S.Ct.* at 2588, 91 *L.Ed.*2d at 325 ("The reasonableness of counsel's performance is to be evaluated from counsel's perspec-

tive at the time of the alleged error and in light of all the circumstances.")). Assuming that counsel did not file a suppression motion because he believed that probable cause existed to justify the police officer's search of the container in the vehicle, we must now determine whether counsel's supposition was in error, and if so, whether the error was "so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Strickland, supra,* 466 *U.S.* at 687, 104 *S.Ct.* at 2064, 80 *L.Ed.*2d at 693.

### C

Probable cause has been defined as "something sufficient to engender a belief somewhere between bare suspicion and a conviction of guilt.... [T]he issue is not whether the information which reached the officer was true or false but only whether the officer was reasonable in accepting the information as true." *State v. Burnett,* 42 *N.J.* 377, 387, 201 *A.2d* 39 (1964). In determining whether probable cause existed in a specific case, we must analyze objectively "what an informed, trained and reasonably experienced police officer under all of the circumstances would have understood in terms of whether there is probable cause." *State v. Novembrino,* 105 *N.J.* 95, 162, 519 *A.2d* 820 (1987). In so doing, we must take into account "the common and specialized experience and work-a-day knowledge of police[ ]" officers. *State v. Contursi,* 44 *N.J.* 422, 431, 209 *A.2d* 829 (1965).

In general, if a search is incident to a lawful arrest, one based on probable cause, the defendant's seizure automatically justifies a warrantless search of the defendant and the area within his or her immediate control. *Chimel v. California,* 395 *U.S.* 752, 763, 89 *S.Ct.* 2034, 2040, 23 *L.Ed.*2d 685, 694 (1969). In *State v. Welsh,* 84 *N.J.* 346, 355, 419 *A.2d* 1123 (1980), we adopted the reasoning in *Chimel* and held that the legitimacy of a search incident to arrest depends upon "[t]he relevant facts ... which disclose what places the person under arrest presently could reach at the time the arrest is undertaken and how likely it is that he [or

she] would attempt resistance or escape or destruction of evidence."

In *New York v. Belton*, 453 *U.S.* 454, 460, 101 *S.Ct.* 2860, 2864, 69 *L.Ed.*2d 768, 774–75 (1981), the United States Supreme Court established a bright-line rule that, under the search incident to arrest exception to the warrant requirement, the lawful arrest of a motor vehicle occupant authorizes the warrantless search of the passenger compartment of the vehicle. The Court found that "articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary item[ ].' " *Id.* at 460, 101 *S.Ct.* at 2864, 69 *L.Ed.*2d at 775 (quoting *Chimel, supra,* 395 *U.S.* at 763, 89 *S.Ct.* at 2040, 23 *L.Ed.*2d at 694). The Court further held that "the police may also examine the contents of any containers found within the passenger compartment ... whether ... opened or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have." *Id.* at 460–61, 101 *S.Ct.* at 2864, 69 *L.Ed.*2d at 775. The Court defined "container" as "any object capable of holding another object," including "closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like." *Id.* at 460 n. 4, 101 *S.Ct.* at 2864 n. 4, 69 *L.Ed.*2d at 775 n. 4.

## III

### A

Applying the above principles, we conclude that the police had probable cause to arrest defendant and that the search of his vehicle was therefore justified as a search incident to a lawful arrest.

The police possessed an overwhelming amount of information linking defendant with the homicide. The homicide occurred on a public street in front of approximately 100 to 150 people, some of whom spoke to the police immediately after the shooting. By the time of defendant's arrest, the officers already had received information from two confidential informants who were at the scene of the crime and implicated defendant in the shooting. The informants also provided a description of the vehicle and the license plate number. After locating defendant's vehicle, but before they arrested defendant, the arresting officers received information from headquarters corroborating the information conveyed by the informants. Eyewitness citizen informants had provided the corroborating information.

We conclude that the cumulative information received by the arresting officer within one-half hour of the shooting provided "ample cause" to stop defendant's vehicle and arrest him. *See* *Chambers v. Maroney*, 399 *U.S.* 42, 46–47, 90 *S.Ct.* 1975, 1979, 26 *L.Ed.*2d 419, 425–26 (1970) (finding that police had "ample cause" to make warrantless arrest for robbery where they had spoken to observers and victim and received specific information about vehicle and its occupants).

### B

As discussed, when counsel fails to file a suppression motion, the defendant not only must satisfy both parts of the *Strickland* test but also must prove that his or her Fourth Amendment claim is meritorious. *Fisher, supra*, 156 *N.J.* at 501, 721 *A.2d* 291.

Because we conclude that the police had probable cause to arrest defendant, we find no merit in defendant's claim that trial counsel should have filed a motion to suppress the evidence discovered during the search of defendant's vehicle as that search is a valid search incident to defendant's lawful arrest. The search of defendant's vehicle was conducted immediately after he was placed in a police car. The officers had probable cause to believe that defendant was involved in a shooting and therefore reason-

ably believed that he was potentially dangerous. The search was confined to the passenger compartment of defendant's vehicle and the bullets were recovered in a pouch hidden under the driver's side dashboard. The exposed tassels hanging from the pouch led the investigating officer to locate the pouch and the bullets. Because the bullets were discovered during a valid search incident to the arrest, the bullets properly were admitted into evidence and would not have been suppressed. Likewise, defendant's statement was not the fruit of an unlawful search and therefore was properly admitted. Accordingly, it cannot be said that trial counsel made "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland, supra,* 466 *U.S.* at 687, 104 *S.Ct.* at 2064, 80 *L.Ed.*2d at 693.

Defendant also failed to show that the allegedly deficient performance of counsel prejudiced his defense so as to deprive defendant of a fair trial. *Ibid.* Even assuming a successful motion to suppress the evidence, defendant contends that the only evidence of defendant's involvement would have consisted of the testimony of the shooter, Ronald Henderson. However, as noted, several witnesses at the scene of the shooting informed the police almost immediately after the crime occurred that defendant was the driver of the car used in the shooting. Further, two of the victim's cousins testified that they observed defendant's car drive slowly towards the victim immediately before he was shot and identified defendant, who they had known for their entire lives, as one of the occupants in the car. Moreover, defendant's own testimony revealed that he drove the Hendersons to and from the scene of the crime. Henderson also testified in respect of defendant's involvement and stated that he observed defendant place the gun in his trunk after Henderson had used it to shoot Wheeler. In view of the overwhelming evidence produced at trial of defendant's guilt, we disagree with defendant that if the bullets and his statement had been suppressed the outcome of the trial would have been different.

Thus, we conclude that because there was probable cause to arrest defendant, defendant's counsel were not ineffective for failing to challenge defendant's arrest, the search of his vehicle, or his subsequent confession. Accordingly, even if defendant's petition for post-conviction relief had been timely, he failed to present a *prima facie* claim for ineffective assistance of counsel and is thus not entitled to an evidentiary hearing.

## IV

Defendant's petition for post-conviction relief is time-barred by *Rule* 3:22–12. Furthermore, defendant has failed to explain the delay in the filing of his petition. We are convinced that the circumstances of this case do not present excusable neglect within the meaning of the rule, nor do the "interests of justice," *Mitchell, supra,* 126 *N.J.* at 575–76, 601 *A.2d* 198, require relief. The record shows that probable cause existed and that the evidence would not have been suppressed.

Reversed.

*For reversing*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA, and ZAZZALI—7.

*Opposed*—None.