**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5363-16T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

PABLO S. MACHADO,

      Defendant-Appellant.

_____

Submitted September 12, 2018 – Decided  November 16, 2018

Before Judges Sabatino and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 07-10-1579.

Joseph E. Krakora, Public Defender, attorney for appellant (Andrew P. Slowinski, Designated Counsel, on the brief).

Andrew C. Carey, Middlesex County Prosecutor, attorney for respondent (Joie D. Piderit, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Pablo Machado appeals from the trial court's July 14, 2017 order, denying his petition for post-conviction relief ("PCR"). We affirm.

This case was tried twice, both trials resulting in defendant's conviction for armed robbery. The indictment arose out of the robbery of a taxi driver in New Brunswick in 2007. The driver had taken two passengers to their requested destination about a mile away. One of the passengers, alleged to be defendant, then pointed a gun at the driver's head, demanded money, and began striking him. Several other men wearing masks appeared, and they took part in robbing the driver of cash, a silver chain, and other items. At some point, defendants also allegedly disconnected the taxi cab's two-way radio.

That same night, the victim reported the incident to police. He was interviewed at the police station by an Officer Bobadilla, who is not a native Spanish speaker and who might have misunderstood some of the victim's account. Three months later, the victim returned to the police station and was shown an array of six photos, one of which was of defendant. The array was set up by Detective John Selesky, but administered by Officer Sergio Matias. Notably, the instruction sheet given to the victim was in English rather than in Spanish. The victim unequivocally identified defendant from the photos as one of the robbers, although Officer Matias neglected to ask the victim to sign the

back of the photo. The victim also told Detective Selesky he had seen defendant on the street since the robbery and that defendant had made a threatening gesture to him.

At defendant's first trial in December 2008, the primary factual dispute centered on the identification of defendant as one of the robbers. The jury convicted defendant of armed robbery, terroristic threats, and fourth-degree theft. After mergers, the court sentenced defendant on the armed robbery count to a thirteen-year custodial term, subject to a parole disqualifier under the No Early Release Act, N.J.S.A. 2C:43-7.2, plus a seven-year concurrent term on the conspiracy charge.

Defendant appealed this conviction, arguing, among other things, that the trial judge improperly admitted proof of caller identification, which the prosecution used to connect him to the robbery. See State v. Machado, No. A-3047-09 (App. Div. Oct. 14, 2011) (slip. op. at 9-10). We concluded that the judge had erred in admitting that evidence, because it was based on multiple levels of inadmissible hearsay. Id. at 12-18. Because the admission of the hearsay proof was not harmless, we remanded the matter for a new trial. Id. at 19-22.

Thereafter, defendant was tried again before a jury and a different judge in August 2012.[1]  He was once again found guilty of armed robbery and conspiracy to commit armed robbery.  The State dismissed the weapons count, and the jury found defendant not guilty of the remaining counts.  The sentencing judge imposed the same custodial terms that had been imposed after the first trial, subject to certain jail credits and a five-year period of parole supervision.

In defendant's second appeal, we affirmed defendant's conviction and sentence.  State v. Machado, No. A-6185-12 (App. Div. May 22, 2015) (slip. op. at 3-5).  We rejected defendant's arguments that the trial court erred in failing to charge the jury with an accomplice liability charge, or that prosecutorial misconduct during the trial and in summation deprived defendant of a fair trial. Id. at 5-10.  We also affirmed the trial court's sentence as being within the sentencing guidelines and based on a valid assessment of the mitigating and aggravating factors, which included the fact that the robbery was perpetrated while defendant was on probation.  Id. at 11-13.

On April 16, 2016, defendant filed a petition for PCR based on alleged ineffective assistance of counsel.  Defendant alleged his trial attorney's

---

[1]  The judge who presided over the first trial had been assigned to a different trial division before the second trial.

representation was deficient because he failed to request a <u>Wade</u>[2] hearing before both his first and second trials to suppress the victim's out-of-court identification of defendant as unreliable. Defendant also alleged ineffective assistance of counsel based on a conflict of interest because his trial attorney's firm represented Officer Matias, who conducted the photo-array line up, on an unrelated family court matter.

Judge Diane Pincus held an evidentiary hearing on defendant's PCR petition on June 22, 2017. At the PCR hearing, defendant's trial attorney testified that at the time of the first trial, he was working as a pool attorney for the Office of the Public Defender. It was his first robbery trial, and he had never previously conducted a <u>Wade</u> hearing. He knew, however, that he may have to request a <u>Wade</u> hearing, but was not sure if he could overcome the threshold burden of impermissible suggestibility in the photo-array procedure. He therefore consulted with more experienced public defenders. The consulting attorneys advised trial counsel that he would probably lose the hearing, and that by examining the victim prior to trial, he risked solidifying the victim's self-assurance that he identified the correct individual. The consulting attorneys advised that the better strategy would be to capitalize on the inconsistencies in

---

[2] <u>United States v. Wade</u>, 388 U.S. 218 (1967).

the victim's statements during cross-examination at trial. Nevertheless, at the PCR hearing, trial counsel expressed regret, in hindsight, that he had chosen not to pursue the hearing because he could have gained some critical information for use during trial. He also testified, however, that a Wade hearing would have been pointless before the second trial, because by then it was clear there was no evidence of impermissible suggestibility.

Defendant testified at the PCR hearing that he asked his attorney to pursue a Wade hearing before both trials and alleged his trial attorney had a conflict of interest. On July 14, 2017, Judge Pincus denied defendant's PCR application in a written opinion. The PCR court found that trial counsel's decision not to pursue a Wade hearing during the first and second trial was due to sound trial strategy and did not amount ineffective assistance of counsel. The court also found that defendant knowingly waived any conflict of interest arising from trial counsel's partner representing Officer Matias in an unrelated matter. On appeal of the court's denial of PCR, defendant raises the following points for our review:

> POINT I
>
> THE PCR COURT SHOULD HAVE HELD THAT DEFENDANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED BY HIS ATTORNEY'S FAILURE TO FILE A WADE

MOTION BEFORE EITHER THE FIRST OR SECOND TRIAL DESPITE DEFENDANT'S REPEATED REQUESTS. (U. S. CONST. AMEND. VI; N. J. CONST. ART. I, ¶ 10)

(a) Defense Counsel Admitted that his Decision Not to File a Wade Motion at the First Trial Was an Error Due to Inexperience.

(b) Defense Counsel Was Ineffective in Rejecting His Client's Request to File a Wade Motion Before the Second Trial.

(c) The Trial Judge Denied Defendant's Application to Exclude the Victim's Highly Unreliable Identification Testimony at the Second Trial Based on the Mistaken Assumption That a Wade Hearing Had Already Been Conducted on the Issue.

(d) The PCR Court's Decision Affords Inadequate Respect to Defendant's Right to Make Critical Decisions Regarding the Conduct of His Own Trial.

POINT II

THE PCR COURT ERRED IN FAILING TO RECOGNIZE THE DISQUALIFYING CONFLICT OF INTEREST THAT AFFECTED DEFENSE COUNSEL'S PERFORMANCE DURING THE SECOND TRIAL.

Mindful of the trial judge's opportunity to hear and see live witnesses, we defer to a trial court's factual findings made after an evidentiary hearing on a petition for PCR. State v. Nash, 212 N.J. 518, 540 (2013). "[W]e will uphold the PCR court's findings that are supported by sufficient credible evidence in

the record." Ibid. (citing State v. Harris, 181 N.J. 391, 415 (2004)). However, we need not "defer to a PCR court's interpretation of the law; a legal conclusion is reviewed de novo." Id. at 540-41 (citing Harris, 181 N.J. at 415-16). A PCR petitioner carries the burden to establish the grounds for relief by a preponderance of the credible evidence. State v. Goodwin, 173 N.J. 583, 593 (2002) (citations omitted). Further, to establish an ineffective-assistance-of-counsel claim, a convicted defendant must demonstrate: (1) counsel's performance was deficient, and (2) the deficient performance actually prejudiced the accused's defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); see also State v. Fritz, 105 N.J. 42, 58 (1987).

To satisfy the first prong of the Strickland test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687). There is a presumption that counsel exercised reasonable judgment in trial strategy:

> To satisfy prong one, [a defendant] ha[s] to overcome a strong presumption that counsel exercised reasonable professional judgment and sound trial strategy in fulfilling his responsibilities. [I]f counsel makes a thorough investigation of the law and facts and considers all likely options, counsel's trial strategy is virtually unchallengeable. Mere dissatisfaction with a

8

counsel's exercise of judgment is insufficient to warrant overturning a conviction.

[Nash, 212 N.J. at 542 (third alteration in original) (citations omitted).]

To satisfy the second prong, a defendant must prove he suffered prejudice due to counsel's deficient performance. Strickland, 466 U.S. at 687. A defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 60-61. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

We first turn to defendant's argument that his counsel was constitutionally ineffective in failing to request a Wade hearing before both the first and second trials. In between defendant's two trials, the New Jersey Supreme Court revised the standard for determining the admissibility of an out-of-court identification. See State v. Henderson, 208 N.J. 208, 285-96 (2011). The revised standard imposes more stringent obligations on the State to show the reliability of the eyewitness identification, delineating specific factors to be considered by the court in assessing whether there is evidence of suggestiveness that could lead to a mistaken identity. See id. at 288-92. The Court, however, specifically held that the revised test would apply only in future cases and that its ruling would

"take effect thirty days from the date this Court approves new model jury charges on eyewitness identification." Id. at 302. The Court approved the revised charges on September 4, 2012, so the revised Henderson test was not applicable at the time of either of defendant's trials. Cf. State v. Sanchez-Medina, 231 N.J. 452, 466-67 (2018) (holding that Henderson test applied when trial was held after October 4, 2012).

Accordingly, the pre-Henderson standard, as outlined in by the United States Supreme Court in Manson v. Brathwaite, 432 U.S. 98 (1977), and adopted by the New Jersey Supreme Court in State v. Madison, 109 N.J. 223 (1988), was in effect during the pendency of defendant's case. Under the Manson/Madison standard, a defendant must first show that the identification procedure was "impermissibly suggestive." Id. at 232. An identification is impermissibly suggestive "where all the circumstances lead forcefully to the conclusion that the identification was not actually that of the eyewitness, but was imposed upon him so that a substantial likelihood of irreparable misidentification can be said to exist." State v. Farrow, 61 N.J. 434, 451 (1972). If a defendant meets the burden to establish that the police used impermissibly suggestive identification procedures, then a court considers whether the identification was nevertheless reliable based on the totality of the circumstances. See Madison, 109 N.J. at

232-33.

Considering the facts of this case under the Manson/Madison standard, we conclude that the PCR court's finding that the trial attorney exercised reasonable judgment in forgoing a Wade hearing before each trial is supported by substantial credible evidence in the record. By consulting with more experienced public defenders, trial counsel engaged in a "thorough investigation of law" with respect to a Wade hearing. Strickland, 466 U.S. at 690. These attorneys advised trial counsel that he may not be able to establish evidence of impermissible suggestibility. Similarly, the PCR court found that despite the procedural errors made by Officer Matias in administering the photo array, "there was no apparent evidence to suggest that under the totality of circumstances, the victim's identification of the Defendant was somehow influenced by the police." Based on the record before us, we agree that there was a reasonable possibility that defendant would have been unable to meet the first prong of the Manson/Madison test and would have risked fortifying the victim's identification and testimony if he pursued a Wade hearing prior to the first trial. Likewise, prior to the second trial, trial counsel had further reason to believe that he would be unable to establish impermissible suggestibility based on the victim's testimony at the first trial.

11

Moreover, trial counsel was not bound by defendant's choice to pursue a Wade hearing, as it is not one of the specific instances in which a criminal lawyer is bound to abide by the client's decision under the New Jersey Rules of Professional Conduct. See RPC 1.2(a) ("In a criminal case, the lawyer shall consult with the client and, following consultation, shall abide by the client's decision on the plea to be entered, jury trial, and whether the client will testify."). Accordingly, this decision rested within the ambit of trial counsel's strategy and tactics. As noted above, trial counsel reasonably consulted with more experienced attorneys and weighed the potential benefits and harms of pursuing a Wade hearing. Thus, notwithstanding trial counsel's testimony that he regretted declining to pursue a Wade hearing prior to the first trial, we find that there is sufficient objective evidence in the record to sustain the PCR's court's finding that trial counsel's performance was not constitutionally deficient. Because we conclude that defendant failed to establish the first Strickland prong, we need not consider the prejudice prong. See Nash, 212 N.J. at 543-44.

Next, we turn to defendant's contention that trial counsel had a conflict of interest. The representation of Officer Matias by a partner of defendant's trial attorney in an unrelated matter occurred between defendant's two trials. We agree with the PCR court that defendant knowing and voluntarily waived any

12

potential conflict by this representation. Defendant gave written informed consent to the continued representation by his trial attorney, and the representation was permissible under RPC 1.7(b). Consequently, we find that defendant's contention is barred by the doctrine of invited error. See Brett v. Great Am. Recreation, 144 N.J. 479, 503 (1996) ("The doctrine of invited error operates to bar a disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be error.").

The remaining issues raised by defendant lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5363-16T4