# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0295-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

D.J.D.,[1]

     Defendant-Appellant.

_____

> Submitted September 16, 2021 – Decided September 22, 2021
>
> Before Judges Alvarez and Mawla.
>
> On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 06-04-0370.
>
> Jacobs & Barbone, PA, attorneys for appellant (David Castaldi and Louis M. Barbone, on the briefs).
>
> Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for appellant (Kaila L. Diodati, Assistant Prosecutor, of counsel and on the brief).

---

[1] We use initials to preserve the confidentiality of these proceedings. R. 1:38-3(c)(9).

PER CURIAM

Defendant D.J.D. appeals from an August 31, 2020 order denying his second petition for post-conviction relief (PCR). We affirm.

In State v. D.D., No. A-1682-09 (App. Div. Jan. 27, 2012) (slip op. at 53) (D.D. I), we recounted the facts leading to defendant's conviction on two counts of first-degree sexual assault, N.J.S.A. 2C:14-2(a)(1), one count of second-degree sexual assault, N.J.S.A. 2C:14-2(b), and three counts of third-degree child endangerment, N.J.S.A. 2C:24-4(a), of three underage boys, J.W., B.M., and J.F. Defendant abused the children for approximately three years beginning when they were between the ages of six and nine. Id. at 2.

Detective Sergeant Jasmin Calderon of the Cumberland County Prosecutor's Office investigated the case and interviewed two of the boys who denied the abuse. Id. at 8-9. We noted "Calderon doubted the boys' denials based on their body language during the interviews. . . . [H]owever, [Calderon] took no further action because [a] federal agency was handling the investigation." Id. at 9-10. In June 2005, the third child revealed the abuse to the police. Id. at 10. When the other two boys learned of the third child's revelation, they gave detailed descriptions of the sexual assault and admitted they did not previously tell Calderon the truth. Id. at 12-13.

A-0295-20

At trial, the State adduced what we described as "overwhelming evidence of defendant's guilt" including testimony from all three victims, their relatives, and defendant's friend.  Id. at 15-19, 31.  Defendant testified and presented testimony from several witnesses, including Calderon.  Id. at 20, 37.  We noted Calderon

> testified extensively on direct examination about her background and training in Finding Words, RATAC ("rapport building, anatomy inquiry, touch inquiry, abuse scenario and closure"), and the [Child Sexual Abuse Accommodation Syndrome] CSAAS . . . .  She explained that it is often difficult for children to disclose sexual abuse, and that they are frequently forced into secrecy because of shame, fear, guilt, or threats.  Children also feel entrapped and helpless, and boys worry about being labeled homosexuals.

> Calderon also testified on direct about a child's demeanor, the importance of body language, and the factors causing someone to be susceptible.  She explained her technique for interviewing children, after which defense counsel remarked, "you seem to be an expert in this area."  The defense elicited testimony that Calderon had interviewed hundreds of children who were victims or witnesses of sexual abuse, and that patrol officers no longer conducted these interviews.

> On cross-examination, the State probed further into Calderon's experience and understanding of RATAC, Finding Words, and CSAAS.  For example, when questioning Calderon about CSAAS . . . , the State elicited testimony that the non-disclosure rate for men was between forty-two and eighty-five percent, and that eighty-six percent of sexual assaults are

3

unreported. Based on her training and experience, she explained that a victim often becomes loyal to an alleged perpetrator, and that the severity of the abuse could create "blocks" to disclosure. She also testified about the boys' body language, which defense counsel first addressed on direct. Defense counsel did not object to these questions.

[Id. at 37-38.]

Among the issues defendant raised in D.D. I was an argument asserted "for the first time on appeal, that the court erred by allowing the State to elicit expert testimony from Calderon on the . . . []CSAAS[] . . . ." Id. at 36. We rejected the argument noting: 1) the trial judge did not instruct the jury to treat Calderon's testimony as expert testimony because she was not qualified as an expert; 2) defense counsel did not object to the judge's decision; 3) defense counsel conceded an expert charge was unnecessary despite referring to Calderon as an expert during summation; and 4) "Calderon's opinion as to whether J.W. was forthcoming in his interview could not have improperly influenced the jury given J.W.'s admission that he lied to Calderon to protect defendant, and the fact that defense counsel elicited additional testimony from Calderon that J.W.'s body language could have meant something different." Id. at 38-40. We affirmed defendant's convictions and sentence. Id. at 53.

A-0295-20

Defendant's first PCR petition was denied. On appeal, he argued defense counsel was ineffective because he failed to call expert witnesses. State v. D.D., No. 5232-12 (D.D. II) (App. Div. Sept. 19, 2014) (slip op. at 10). We rejected this argument because defense counsel informed the trial judge he wanted to call two expert witnesses to rebut the State's expert, but the State never called its expert. Id. at 10-11. Furthermore, "defendant called . . . Calderon to proffer testimony similar to one of the proposed defense experts concerning how young children can be easily influenced." Ibid. We affirmed. Ibid.

In July 2019, defendant filed a second PCR petition. The petition was predicated on the Supreme Court's decision in State v. J.L.G., holding "that expert testimony about CSAAS in general, and its component behaviors other than delayed disclosure, may no longer be admitted at criminal trials." 234 N.J. 265, 272 (2018). In PCR counsel's written submission, he argued the court should grant defendant's petition because

> pursuant R[ule] 3:22-2(a) and R[ule] 3:22-4(a)(1) and (3), . . . he was denied substantial Constitutional rights in the conviction proceedings, and . . . given the state of the law at the time of those proceedings, the ground for relief specified herein could not have been previously asserted or reasonably raised prior to those conviction proceedings. Further, denial of relief at present would be contrary to a new [r]ule of [l]aw that was unavailable during the entire pendency of the conviction proceedings, including direct appeal, his

5

A-0295-20

> first [PCR] application, and the Appellate Division
> review of that post-conviction denial in 2014.

Defendant also argued his petition was timely pursuant to Rule 3:22-4(b) and Rule 3:22-12(a)(2)(A) because it was "filed within one year of the date upon which those Constitutional rights violated were first recognized by the Supreme Court . . . and made retroactive upon collateral review."

Defendant's petition was heard on August 31, 2020. At oral argument, PCR counsel cited our decision in State v. G.E.P., in which we reversed and remanded convictions of child sexual assault where an expert gave CSAAS testimony, by granting pipeline retroactivity of the holding in J.L.G. 458 N.J. Super. 436, 443 (App. Div. 2019).

The PCR judge denied the petition. Citing D.D. I, the judge found we addressed "the issue . . . [whether defendant] was entitled to a new trial on the basis of . . . Calderon[] having testified at trial as an expert witness" and rejected it for the reasons articulated in our decision. The judge also noted our decision in D.D. II denying defendant's first PCR petition, was issued in September 2014. Furthermore, he noted G.E.P. had been appealed and the Supreme Court had "only . . . afforded pipeline retroactivity" to its holding in J.L.G. The judge concluded "[t]his pipeline retroactivity does not at this time include the case before this court[,]" reasoning as follows:

In this case the defendant was convicted on August 13[, 2009].

The defendant, once again, filed a direct appeal of his conviction, which was denied by the . . . Appellate Division on January 27[], 2012.

The defendant's time for filing a petition for certification before the New Jersey Supreme Court on his direct appeal, thus, expired on February 15[], 2012.

On September 19[], 2012 the defendant then filed his [PCR] petition . . . , which was denied . . . on June 13, 2013.

On September 9[], 2014, the defendant filed an appeal of the denial of his [PCR petition], which was denied by the Appellate Division on September 19[], 2014.

The defendant's time for filing a petition for certification before the New Jersey Supreme Court on the denial of his appeal of [PCR petition], thus, expired on October 9, 2014.

The conclusion of . . . defendant's case in this matter then and the date on which he exhausted all avenues of direct review was in fact October 9[], 2014.

The ruling of the New Jersey Supreme Court in J.L.G. occurred on July 13[], 2018, nearly three years after the defendant[] had exhausted all avenues of appeal in this matter and the defendant's matter was no longer at that time pending.

Accordingly, this case is not included within the decision of the court in G.E.P., dictating pipeline

A-0295-20

retroactivity for the holding of the court in J.L.G., as opposed to complete retroactivity.

Defendant raises the following points on this appeal:

POINT I — THE PCR COURT ERRED AS A MATTER OF LAW BY MISREADING THE ISSUE DECIDED BY THE APPELLATE DIVISION IN G.E.P. LEADING TO THE PCR COURT'S ERRONEOUS DENIAL OF RELIEF TO DEFENDANT.

POINT II — THE PCR COURT ERRED AS A MATTER OF LAW BY NOT GRANTING DEFENDANT RELIEF SINCE THE FACTS IN THE RECORD BEFORE THE PCR COURT LEAD TO THE INESCAPABLE CONCLUSION THAT THERE EXISTS A REASONABLE LIKELIHOOD THAT DEFENDANT RECEIVED AN UNFAIR TRIAL.

"Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus." State v. Goodwin, 173 N.J. 583, 593 (2002) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)). The process affords an adjudged criminal defendant a "last chance to challenge the 'fairness and reliability of a criminal verdict . . . .'" State v. Nash, 212 N.J. 518, 540 (2013) (quoting State v. Feaster, 184 N.J. 235, 249 (2005)).

"[W]here the [PCR] court does not hold an evidentiary hearing, we may exercise de novo review over the factual inferences the trial court has drawn from the documentary record." State v. O'Donnell, 435 N.J. Super. 351, 373

8

(App. Div. 2014) (citing State v. Harris, 181 N.J. 391, 420-21 (2004)). We review a PCR court's legal conclusions de novo. Harris, 181 N.J. at 415-16 (citing Toll Bros. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)).

Rule 3:22-4(b) states:

> A second or subsequent petition for post-conviction relief shall be dismissed unless:
>
> (1) it is timely under R[ule] 3:22-12(a)(2); and
>
> (2) it alleges on its face either:
>
>> (A) that the petition relies on a new rule of constitutional law, made retroactive to defendant's petition by the United States Supreme Court or the Supreme Court of New Jersey, that was unavailable during the pendency of any prior proceedings; or
>>
>> (B) that the factual predicate for the relief sought could not have been discovered earlier through the exercise of reasonable diligence, and the facts underlying the ground for relief, if proven and viewed in light of the evidence as a whole, would raise a reasonable probability that the relief sought would be granted; or
>>
>> (C) that the petition alleges a prima facie case of ineffective assistance of counsel that represented the

defendant on the first or subsequent application for post-conviction relief.

Under Rule 3:22-5, "[a] prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings."

In point I, defendant contends the PCR judge erred based on an erroneous reading of J.L.G.  He argues G.E.P. does not bar the application of complete retroactivity of the holding in J.L.G.  We reject defendant's argument for the reasons expressed by the PCR judge.  These arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

In point II, defendant raises various trial errors related to CSAAS and argues as follows:  (1) the State impermissibly utilized statistics on the number of child victims that delay or do not report their abuse; (2) the State impermissibly detailed each component behavior of CSAAS and applied it to the alleged victims in this case; and (3) the trial judge failed to give an expert witness instruction regarding Calderon's testimony.

These errors were not raised in defendant's second PCR petition.  See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (recognizing that

appellate courts will decline to address issues not brought to the attention of the trial court, unless they pertain to the court's jurisdiction or an issue of substantial public importance); State v. Arthur, 184 N.J. 307, 327 (2005) (applying Nieder to PCR appeal). Moreover, none of defendant's arguments are grounds for relief pursuant to Rule 3:22-4(b)(2). The argument related to the expert jury charge was adjudicated and rejected on the direct appeal and defendant's first PCR petition, and therefore is barred by Rule 3:22-5. Finally, as we noted, the State presented overwhelming evidence of defendant's guilt at trial, including testimony from his three victims. Contrary to defendant's contentions, we are unconvinced the record shows a reasonable likelihood he received an unfair trial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0295-20