**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0315-19T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

LOUIS ADAMS, a/k/a
ROBERT BROWN,

     Defendant-Appellant.

_____

Submitted January 4, 2021 – Decided February 2, 2021

Before Judges Currier and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment Nos. 09-09-0823 and 09-09-0825.

Joseph E. Krakora, Public Defender, attorney for appellant (John V. Molitor, Designated Counsel, on the brief).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Meredith L. Balo, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Appellant filed a supplemental pro se brief.

PER CURIAM

Defendant appeals from the May 30, 2019 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. For the reasons that follow, we affirm.

Following a joint jury trial, defendant and a co-defendant, Kenneth Green, were convicted of armed robbery and related offenses stemming from the robbery of Daniel DeAmorim, an off-duty Newark police officer, and his companion at gunpoint at a motel in Linden. Defendant was sentenced on September 20, 2013, to an aggregate extended term of fifty years' imprisonment, forty years of which were subject to the No Early Release Act, N.J.S.A. 2C:43-7. Defendant appealed his convictions and sentence, and we affirmed in an unpublished opinion. State v. Green, Nos. A-2342-13, A-3251-13 (App. Div. Mar. 8, 2017) (slip op. at 2). The Supreme Court later denied defendant's petition for certification. State v. Green, 231 N.J. 409 (2017).

The facts underlying defendant's convictions are set forth in our unpublished opinion and need not be repeated at length here. See Green, slip op. at 2-8. In our opinion, we recounted that DeAmorim was accosted from behind by two assailants, one armed with a gun, as DeAmorim and his

companion were entering the motel room at around 10:00 p.m. on May 18, 2009. Id. at 2. "DeAmorim turned around and fired all thirteen rounds in his [service weapon] at the two men, hitting both of them." Id. at 3. Both men, later identified as defendant and co-defendant Green, fled and subsequently obtained medical treatment at a Paterson hospital for their gunshot wounds. Id. at 3, 6. When questioned by Paterson police about the circumstances under which they were shot, defendant claimed they were shot by "three masked men" during the course of a robbery in Paterson. Id. at 6. However, they were arrested when "police were unable to confirm that a shooting had occurred in the area described by [defendant]." Ibid.

Although the victims "were unable to identify either defendant, their presence at the motel was confirmed by forensic evidence" recovered during the ensuing investigation and presented at the trial. Id. at 2. "The investigation at the motel resulted in the recovery of a loaded Jennings 9 mm handgun next to a pool of blood and shell casings from DeAmorim's weapon." Id. at 4. "Forensic scientist Monica Ghannam, an expert in DNA analysis," testified that she could "not exclude" defendant as a "potential contributor[]" to "a mixture of at least

two individuals' DNA" recovered "from the grip" and "the slide of the gun." Ibid.[1]

Neither defendant testified at trial but presented the defense "that a robbery had not occurred at all; that DeAmorim panicked upon being approached by two African-American males and the event was 'massaged' into a robbery to protect him from possible fallout because he had fired his weapon." Id. at 2. To that end, defendants presented testimony from several law enforcement witnesses "to support the defense that the handgun and other evidence were 'planted at the scene after the incident and before officers were able to process the crime scene,' and to impeach the testimony of witnesses called by the State." Id. at 7.

On January 9, 2018, defendant filed a timely pro se PCR petition alleging numerous claims of ineffective assistance of counsel (IAC). A counseled brief submitted on defendant's behalf raised additional claims. Following oral

---

[1] Specifically, Ghannam testified that comparatively speaking, "approximately [one] in [thirty] unrelated African-Americans, [one] in [twenty-seven] unrelated Caucasians, and [one] in [forty-four] unrelated Hispanics could be possible contributors to the mixture of DNA obtained from the grip of the handgun." Additionally, "approximately [one] in [forty-five] unrelated African-Americans, [one] in [thirty-two] unrelated Caucasians, and [one] in [thirty-eight] unrelated Hispanics could be possible contributors to the mixture of DNA obtained from the slide of the handgun."

A-0315-19T1

argument, Judge Lara K. DiFabrizio denied defendant's petition by order dated May 30, 2019. In an accompanying written opinion, after reviewing the factual background, procedural history, and submissions by the parties, the judge described defendant's IAC claims as follows:

> [Defendant] makes six broad claims for [IAC]: (1) trial counsel failed to pursue a speedy trial; (2) trial counsel's opening statement prejudiced [defendant's] right to a fair trial; (3) trial counsel failed to object and request a limiting instruction upon other wrong evidence being presented to the jury[]; (4) trial counsel failed to make a motion for a new trial; (5) trial counsel failed to object to the State's use of the DNA evidence at trial, and failed to object that the withholding of the DNA evidence from the defense was a Brady[2] violation[]; and (6) cumulative errors.

Preliminarily, the judge rejected defendant's claim regarding "other wrongs evidence" as procedurally barred under Rule 3:22-5, precluding PCR "if the identical . . . or substantially equivalent issue was previously decided on [the] merits" in the direct appeal. See State v. McQuaid, 147 N.J. 464, 484 (1997) ("If the same claim is adjudicated on the merits on direct appeal a court should deny PCR on that issue."). The judge explained that the issue was raised "in the appellate proceedings, . . . though framed as an error committed by the trial judge," and the appellate court concluded that "N.J.R.E. 404(b) [did] not

---

[2] Brady v. Maryland, 373 U.S. 83 (1963).

apply" as "evidence regarding the character of the . . . [m]otel [did] not constitute evidence of 'other crimes, wrongs, or acts' of either defendant." See Green, slip op. at 13-14 (rejecting defendant's argument that testimony "that the . . . [m]otel . . . was a place known for drug sales, prostitution, and other unsavory activities" constituted inadmissible N.J.R.E. 404(b) evidence against either defendant).

Addressing the remaining claims substantively, the judge applied the governing legal principles and concluded defendant failed to establish a prima facie case of IAC by a preponderance of the evidence. Viewing the facts in the light most favorable to defendant, the judge found defendant failed to show that either counsel's performance fell below the objective standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 49-53 (1987), or that the outcome would have been different without the purported deficient performance as required under the second prong of the Strickland/Fritz test. Additionally, the judge concluded that defendant was not entitled to an evidentiary hearing because he failed to present any issues that could not be resolved by reference to the existing record.

In her written decision, the judge acknowledged that in order to demonstrate that "his attorney was ineffective by failing to file a speedy trial

motion, [defendant] must establish that the motion would have had merit." See

State v. O'Neal, 190 N.J. 601, 618-19 (2007) (noting that in order to satisfy the

Strickland standard when an IAC claim is based on the failure to file a

suppression motion, a defendant must establish that the motion had merit); State

v. Worlock, 117 N.J. 596, 625 (1990) ("The failure to raise unsuccessful legal

arguments does not constitute [IAC]."). However, after applying the "four-part

balancing analysis established in Barker v. Wingo, 407 U.S. 514 (1972)," the

judge determined that while "a nearly four year delay from arrest to trial clearly

trigger[ed] a Barker inquiry," the delay did not "amount[] to a speedy trial

violation" given "the nature of the charges,"[3] "the complexity of the proofs," the

protracted "pre-trial motions" filed by the defense, "the court's congested

calendar," defendant's "failure to assert his right [to a speedy trial,]" and

defendant's unsupported "claim of prejudice."

---

[3] Co-defendant Green was also charged and convicted of carjacking the vehicle of another motel patron "from the motel parking lot as he fled the scene." Green, slip op. at 2. Green could not be excluded "as the source for the DNA" found inside the vehicle when it was later recovered. Id. at 4. Additionally, "a projectile [found] on the steps to Green's residence" was linked "to both the shooting at the . . . [m]otel and to Green." Id. at 6. "[T]he projectile . . . was fired from DeAmorim's weapon" and "Green's DNA profile matched the DNA recovered from the projectile." Ibid. Although defendant was neither charged with nor implicated in the carjacking charge, the charges were prosecuted jointly.

A-0315-19T1

Turning to defendant's claim that his attorney's "opening statement was ineffective and prejudiced his right to a fair trial," the judge noted that although "defense counsel [was] not required to make opening statements in a trial," see R. 1:7-1(a), "our courts have held that in 'rare instances' opening statements can prejudice the defendant and [']thwart the fundamental guarantee of [a] fair trial.'" See State v. Castagna, 376 N.J. Super. 323, 360-61 (App. Div. 2005) (finding IAC where, in his opening statement, trial counsel conceded the defendant's guilt to several charges and "labeled him criminal and a disgrace to his position as a police officer").

However, according to the judge, "[h]ere, [defense counsel] made his opening statement after [co-counsel's] opening statement." Therefore,

> [t]here was no need for counsel to have repeated the facts or similar arguments in his own client's case, as Green's counsel already detailed the facts. It was reasonable trial strategy for [defense counsel] to believe it would have been repetitive and unnecessary to his opening. Furthermore, [defense counsel] was not required to explain the legal concepts referenced by [defendant], as they were repeatedly explained to the jury by the judge. In fact, [defendant] even acknowledges that [defense counsel] did not have to give an opening statement at all.

Further, in concluding that "nothing in the record indicate[d] that [defense counsel's] opening statement prejudiced [defendant], resulting in [defendant]

8

being unable to receive a fair trial," the judge pointed out that "in his opening statements," defense counsel "never conceded guilt on any charges, nor made any inflammatory remarks about [defendant]."

Next, the judge addressed defendant's claim "that trial counsel was ineffective when he failed to file a motion for a new trial" and determined from her review of the record that had counsel filed such a motion, "it would have been denied."  Like "the Appellate Division in [adjudicating defendant's] direct appeal," the judge rejected defendant's contentions that "he was entitled to a new trial due to insufficient evidence, perjured testimony, erroneous jury instructions, and discovery violations."

Finally, the judge addressed defendant's primary "claim[] that trial counsel was ineffective because he failed to object to the State's use of DNA evidence at trial, and for not producing his own expert to counter the State's expert witness."  Notably, defendant failed to produce any certification, expert or otherwise, to support his contention that a defense expert could have countered the State's DNA evidence.  State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)("[W]hen a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have

revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification.").

Nonetheless, the judge determined that, contrary to defendant's assertion,

> defense counsel did address and contest the DNA reports, and the testimony of Monica Ghannam . . . , the State's DNA expert. [Defense counsel] first requested a mistrial, which was denied by [the trial judge]. A review of the record makes clear that trial counsel then made a tactical decision to not strike Ms. Ghannam's testimony. [Defense counsel] explained:
>
>> my sense is that I will withdraw my application that the testimony be struck . . . . And without going into much detail, I will say that I think if that were to happen, if your Honor were to strike it or I were to ask for it, I think it would sort of hamstring me from making arguments I want to make generally about the events. So, I think on balance at this time, the defense position for [defendant] has to be to no longer seek to strike the testimony.
>
> Upon review of the reports, and as acknowledged by [the trial judge], some of the DNA evidence was actually beneficial to [defendant]. In fact, trial counsel ably employed the DNA evidence during cross-examination and during summation.[4] It is clear trial counsel's decision to not strike the testimony was a strategic decision and did not fall below an[] objective standard of reasonableness. Moreover, even assuming counsel's performance could in some way be

---

[4] In summations, defense counsel recounted the statistical probabilities and asserted it had "virtually no probative value."

characterized as deficient, which this [c]ourt does not find, [defendant] has failed to meet the heavy burden of proof that but for counsel's performance, the result would have been any different given the damning evidence of his guilt.

As to defendant's claim he "first . . . heard of DNA evidence . . . when Ms. Ghannam testified at trial" and his attorney was ineffective for failing to "object[] to the 'withholding of the DNA evidence' as a <u>Brady</u> violation," the judge stated:

> As explained by the [c]ourt in [defendant's] direct appeal:
>
>> The prosecutor did not challenge defense counsel's representation they had not received the report but did not concede the report was not turned over to the defense. The prosecutor stated he had "repeatedly" invited defense counsel to review the State's file; defense counsel had the evidence log sheet/exhibit list which included the expert report for three to four weeks; and the State had signed receipts for the evidence.
>
> [<u>Green</u>, slip op. at 17.[5]]

---

[5] This court expressly rejected co-defendant Green's claim on direct appeal that he was "deprived . . . of his right to a fair trial" by virtue of the trial court's denial of "his motion for a mistrial due to the State's noncompliance with on-going discovery requirements," and "failure to provide Ghannam's [DNA] report" of "her analysis of DNA recovered from the handgun" "prior to trial, as required by <u>Rule</u> 3:13-3." <u>Green</u>, slip op. at 14-15. Assuming there was a

In fact, a review of the file reveals the lab reports and their findings were presented to the Grand Jury in September of 2009. . . . Thus, any contention the State "suppressed evidence" as required by Brady is meritless, and since "[t]he failure to raise unsuccessful legal arguments does not constitute [IAC]," [defendant's] instant claim must fail.

Finding no "legal errors, alone or combined, which would render the trial unfair," the judge also rejected defendant's cumulative error argument.

On appeal, in his counseled brief, defendant raises the following points for our consideration:

POINT I

THIS COURT SHOULD REVERSE THE PCR JUDGE'S DECISION TO DENY THE DEFENDANT'S PETITION FOR [PCR] BECAUSE THE STATE'S VIOLATION OF THE DISCOVERY RULES DESTROYED THE DEFENDANT'S ABILITY TO

---

discovery violation, we specifically addressed whether both defendants were prejudiced by the admission of the expert testimony and concluded they were not. Id. at 20-23. We noted that Ghannam did not testify that there was a "'match' of the evidence to either defendant's DNA," but rather that they could not be excluded. Id. at 20-21. Indeed, "[a]s both the trial judge and Green's counsel agreed, Ghannam's testimony was not of a 'smoking gun' quality." Ibid. Thus, we concluded that Ghannam's testimony did not render co-counsel's opening statement that there was "absolutely no match to [defendants'] . . . DNA" "a lie as, in fact, there was no 'match' of the evidence to either defendant's DNA." Id. at 20. Although defendant did not raise the issue on direct appeal, the same reasoning applies to his current PCR claim and his contention that he was prejudiced by his attorney's opening statement that defendant "never had a gun."

12

MOUNT AN EFFECTIVE DEFENSE AND THE DEFENDANT'S ATTORNEY[] DID NOT SUFFICIENTLY ADDRESS THE DISCOVERY VIOLATION.

POINT II

THIS COURT SHOULD REVERSE THE PCR JUDGE'S DECISION TO DENY THE DEFENDANT'S PETITION FOR [PCR] BECAUSE THE DEFENDANT'S TRIAL COUNSEL DID NOTHING TO CONTEST THE STATE'S DNA EVIDENCE.

POINT III

THIS COURT SHOULD REVERSE THE PCR JUDGE'S DECISION TO DENY THE DEFENDANT'S PETITION FOR [PCR] BECAUSE THE DEFENDANT'S TRIAL COUNSEL DID NOT ADVOCATE FOR THE DEFENDANT DURING HIS OPENING STATEMENT.

POINT IV

THIS COURT SHOULD REVERSE THE PCR JUDGE'S DECISION TO DENY THE DEFENDANT'S PETITION FOR [PCR] BECAUSE THE DEFENDANT'S TRIAL AND APPELLATE ATTORNEYS WERE INEFFECTIVE WHEN THEY DID NOT CONTEST THE ADMISSION OF OTHER WRONGS EVIDENCE WITHOUT A LIMITING INSTRUCTION.

POINT V

THIS COURT SHOULD REVERSE THE PCR JUDGE'S DECISION TO DENY THE DEFENDANT'S PETITION FOR [PCR] BECAUSE THE

DEFENDANT'S TRIAL COUNSEL WAS INEFFECTIVE WHEN HE DID NOT DEMAND A SPEEDY TRIAL.

POINT VI

THIS COURT SHOULD REVERSE THE PCR JUDGE'S DECISION TO DENY THE DEFENDANT'S PETITION FOR [PCR] BECAUSE THE CUMULATIVE ERRORS OF THE DEFENDANT'S TRIAL AND APPELLATE COUNSEL DEPRIVED THE DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

Additionally, defendant raises the following point in his pro se brief:

[POINT I]

THE PCR RECORD IN THIS CASE CONCLUSIVELY ESTABLISHED A [PRIMA FACIE] CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR HAVING FAILED TO PURSUE THE "BROAD DISCOVERY RULES," TO SEEK A MISTRIAL UPON REALIZING THE STATE WAS INTRODUCING EVIDENCE NOT DISCLOSED DURING PRETRIAL DISCOVERY, AND FAILED TO CONDUCT ANY PRETRIAL INVESTIGATION AND, AS SUCH, THIS MATTER MUST BE REMANDED WITH DIRECTIONS.

We are not persuaded by any of these arguments and affirm substantially for the reasons set forth in Judge DiFabrizio's well-reasoned written decision, adding the following comments.

To establish a prima facie claim of IAC, a defendant must show "by a preponderance of the credible evidence," State v. Goodwin, 173 N.J. 583, 593 (2002) (citing State v. Preciose, 129 N.J. 451, 459 (1992)), that: (1) counsel's performance was deficient; and (2) the deficiency prejudiced the defense. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58.  The Strickland/Fritz standard applies equally to both trial and appellate counsel.  State v. Guzman, 313 N.J. Super. 363, 374 (App. Div. 1998); see also State v. Morrison, 215 N.J. Super. 540, 546 (App. Div. 1987).

Because "a defendant must overcome a 'strong presumption' that counsel exercised 'reasonable professional judgment' and 'sound trial strategy' in fulfilling his responsibilities," State v. Hess, 207 N.J. 123, 147 (2011) (quoting Strickland, 466 U.S. at 689-90), "an otherwise valid conviction will not be overturned merely because the defendant is dissatisfied with his or her counsel's exercise of judgment during the trial."  Castagna, 187 N.J. at 314 (citing State v. Coruzzi, 189 N.J. Super. 273, 319-20 (App. Div. 1983)).  Thus, "strategic miscalculations or trial mistakes are insufficient to warrant reversal 'except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of [a] fair trial.'"  Id. at 314-15 (alteration in original) (quoting State v. Buonadonna, 122 N.J. 22, 42 (1991)).

A-0315-19T1

The mere raising of a PCR claim does not entitle the defendant to an evidentiary hearing. Cummings, 321 N.J. Super. at 170. Rather, "view[ing] the facts in the light most favorable to a defendant," Preciose, 129 N.J. at 463 , PCR judges should grant evidentiary hearings in their discretion only if the defendant has presented a prima facie claim of IAC, material issues of disputed fact lie outside the record, and resolution of those issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013). However, "[a] court shall not grant an evidentiary hearing" if "the defendant's allegations are too vague, conclusory or speculative," R. 3:22-10(e)(2), and a defendant "must do more than make bald assertions that he was denied the effective assistance of counsel." Cummings, 321 N.J. Super. at 170.

A PCR claim is not a substitute for a direct appeal and thus must overcome procedural bars before it can even be considered on the merits. R. 3:22-3. To that end, "a defendant may not employ [PCR] to assert a new claim that could have been raised on direct appeal, Rule 3:22-4, or to relitigate a claim already decided on the merits, Rule 3:22-5." Goodwin, 173 N.J. at 593.

Here, on appeal, defendant renews the arguments rejected by the PCR judge. However, we are satisfied from our review of the record and the governing legal principles that Judge DiFabrizio correctly imposed the

16

procedural bar where applicable, and properly determined that substantively, defendant failed to make a prima facie showing of IAC within the Strickland/Fritz test to warrant relief or an evidentiary hearing. See State v. Reevey, 417 N.J. Super. 134, 146-47 (App. Div. 2010) ("[I]t is within our authority to conduct a de novo review of both the factual findings and legal conclusions of the PCR court" where, as here, no evidentiary hearing was conducted (citations and internal quotation marks omitted)). We also conclude that the arguments are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0315-19T1