**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3730-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ARIEL JAZMIN,

    Defendant-Appellant.

_____

Submitted November 14, 2024 – Decided December 19, 2024

Before Judges Natali and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 16-03-0203.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Michele C. Buckley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Ariel Jazmin appeals from a June 23, 2023 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

To provide context for our opinion, we refer, in part, to the recitation of facts set forth in our unpublished opinion affirming defendant's convictions for first-degree possession of a controlled dangerous substance (CDS) with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(1); third-degree possession of imitation CDS with the intent to distribute, N.J.S.A. 2C:35-11(a); third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a), and his resulting aggregate sixteen-year sentence.[1] See State v. Jazmin, A-0628-18 (App. Div. May 16, 2022), certif. denied, 252 N.J. 225 (2022).

On January 20, 2016, the Union County Narcotics Task Force arrested defendant and co-defendant Angel Cesar while conducting surveillance near Park Avenue in Linden. When the officers approached defendant and Cesar's

_____

[1]  The jury acquitted defendant of second-degree possession of a controlled dangerous substance with intent to distribute within 500 feet of a public park. N.J.S.A. 2C:35-7.1.

2

vehicle, they sped off, driving onto the sidewalk and into a park, eventually striking a tree. Defendant jumped out of the vehicle's passenger side window, ran towards the park's pond area, discarded an object later identified at trial as exhibit S-65, which appeared to be a kilo of narcotics, and continued to flee. Officers eventually brought defendant to the ground where he continued to resist arrest by placing his hands underneath his body inaccessible to the officers.

The officers removed Cesar from the vehicle, where he remained after the crash, and observed a black duffle bag which contained four rectangular objects made of compressed powder wrapped in brown tape. The next day, during an additional search of the vehicle, the officers discovered a rock-like substance on the driver's seat. The packages and rock-like substance were suspected narcotics and transported to the Union County Prosecutor's Office (UCPO) forensic lab for testing.

The State offered defendant a plea of eleven years with sixty-one months of parole ineligibility to resolve the charges. At a status conference the court specifically addressed the State's plea offer with defendant and his co-defendant and confirmed defendant's rejection of the plea offer, despite the risk he could be sentenced to a greater custodial term if convicted. The following colloquy ensued at that proceeding:

THE COURT: . . . but for now you have a plea offer. . . . Mr. Cesar's is nine with [fifty-four] months' parole ineligibility. Mr. Jazmin's is [eleven] years with . . . [sixty-one] months' parole ineligibility. You both know that those are your offers, right?

[DEFENDANT]: Yes, Your Honor.

. . . .

THE COURT: And, [defendant], you rejected that offer, right?

[DEFENDANT]: Yes, Your Honor

THE COURT: . . . And, again, I'm not going to take a lot of time to try to be exact as to what you are facing, total amount of time, but it is very significant. You understand that.

[DEFENDANT]: Yes.

THE COURT: We're talking about a lot of years in prison if you go to trial and you get convicted, potentially. You don't know what a sentencing judge might do. It might be a lot less than that. It might be around what you were offered. We don't know -- we don't know that yet, but you do know that potentially you're looking at a lot of time. . . .

Prior to trial, defendants filed a motion to have S-65 retested. The motion judge granted the application. Thereafter, Margaret Cuthbert, a senior forensic chemist with the UCPO's forensic laboratory, took two samples from the exhibit and retested it in the presence of defendants' expert. They tested positive for

4

cocaine. Defendants later filed another motion seeking further testing of five more samples from S-65. The judge granted the motion and the UCPO's lab conducted the additional tests. The results of these tests also were positive for cocaine.

Defendants then filed a motion seeking an analysis of S-65 to determine the amounts of cocaine and boric acid in the exhibit. The motion judge denied the application. In his decision, the judge noted that defendant had been charged with first-degree possession of a CDS, with intent to distribute or dispense, in a quantity of five ounces or more, including any "adulterants or dilutants." The judge therefore found the quantities of cocaine and boric acid in S-65 were irrelevant. The judge noted that "purity" of the cocaine was not an element the State had to prove to establish defendants' guilt under N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(1).

In addition, the State filed a motion in limine to bar defendants from presenting any testimony or argument at trial concerning the percentage or quantity of cocaine and boric acid in S-65, including the specific purity of the cocaine, the unknown percentage or quantity of the cocaine and boric acid in S-65, and why a quantitative test had not been performed on the exhibit. The State also sought to bar defendants from speculating as to what such a quantitative

5

test would have revealed and arguing to the jury that S-65 only contained a small amount of cocaine.

The trial judge granted the State's motion. Like the motion judge, the trial judge found there is "no purity element" in the charge under N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(1). The judge again determined that the relative amounts of cocaine and boric acid in the exhibit were not relevant to determining whether defendants were guilty of that offense.

In the trial court, defendants argued the court erred in granting the motion because the testing results established defendants did not intend to distribute cocaine. On this point, defendants further contended the presence of the four kilos of boric acid showed they intended only to "bait" a prospective drug dealer with a brick laced with cocaine, and then switch the "laced" package with the bricks of boric acid. The judge denied the motion.

Sergeant Gary Webb of the UCPO testified for the State as an expert in the field of packaging, handling, and distribution of narcotics. He discussed the differences between street, mid-level, and upper-level drug dealers, how kilos of narcotics and other substances are formed, the use of cutting agents, and methods drug dealers use to avoid detection. Webb also described boric acid as a white powder. He stated that by adding boric acid as a cutting agent, drug

6

distributors can increase the amount of the drugs they sell and thereby increase their profit margin.

Defendant and Cesar elected not to testify. Neither defendant presented any witnesses.

Consistent with his pretrial arguments, defendant's counsel maintained at trial defendant did not intend to distribute cocaine but instead sought to perpetrate a fraud on the unsuspecting purchasers by selling them the kilos of boric acid. It appears from counsel's arguments he relied on the presence of the four "fake" kilos of cocaine to support his theory, as well as Sergeant Webb's testimony.

Defendant also explained the existence of cocaine in S-65 by contending much of it was planted by the police in the area of the V-shaped cut on the top of the kilo. In support of this argument, defense counsel noted inconsistencies between the testimony of the arresting officers concerning the existence of the V-shaped incision in S-65. Counsel also contended the officer who recovered S-65 in the park held the package for approximately ten minutes and testified he did not see the V-shaped cut or observe any powder on the ground where the item was recovered. Defense counsel also highlighted the next-day search of the vehicle and questioned the location of cocaine recovered on the driver seat.

7

With respect to the resisting arrest charge, counsel argued because the officers were not in uniform and police lights were not visible in the video depicting defendants driving over the sidewalk, defendant was unaware his pursuers were members of law enforcement. He further explained he only failed to surrender his hands at the time of his arrest because he fell forward onto his arms as an officer pinned him to the ground. Finally, defendants' counsel argued defendants were located outside the park when the officers initially approached their vehicle but were chased into the park, thus lacking the intent necessary to support a conviction for distributing CDS in the park.

Following the verdict, defense counsel moved for a mistrial arguing a juror's discovery of razor blades in defendant's jacket pocket during deliberations had the possibility of tainting the jury. Defense counsel also moved for a judgment notwithstanding the verdict as to the charge of first-degree possession with intent to distribute arguing the State failed to present evidence sufficient to establish the distribution charges. The court denied both motions.

On September 12, 2022, Jazmin filed the instant timely petition for PCR contending his counsel was ineffective under the two-part test enumerated in

8

Strickland v. Washington, 466 U.S. 668, 687 (1984),[2] because he: (1) failed to

meet with defendant; (2) failed to review the discovery; (3) erroneously advised

defendant to proceed to trial rather than to accept the State's plea offer.[3]

Specifically, defendant stated his counsel incorrectly advised him to

proceed to trial rather than accept a plea because the "State could not prove the

'intent' element of the charges."  He maintains, despite advising trial counsel he

"very much wanted [the] matter resolved," counsel nevertheless "reassured

[him] that [he] would win at trial" and "should [he be] found guilty of [the] first

degree [CDS] charge[,] the [a]ppeals court [was] guarantee[d to] overturn the

conviction."  Defendant claimed the aforementioned advice, along with defense

counsel's alleged failure to advise him of the "existence of any plea offer"

constituted ineffective assistance under Strickland.

---

[2]  To establish ineffective assistance of counsel, a convicted defendant must satisfy the two-part test enunciated in Strickland, 466 U.S. at 687, by demonstrating that:  1) counsel's performance was deficient, and 2) the deficient performance actually prejudiced the accused's defense.  The Strickland test has been adopted for application under our State constitution.  See State v. Fritz, 105 N.J. 42, 58 (1987).

[3]  Before us, defendant does not reprise all of the arguments he raised before the PCR court and we deem those unbriefed arguments waived.  See Telebright Corp. v. Dir., N.J. Div. of Tax'n, 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any arguments supporting the contention in its brief); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2024) ("[A]n issue not briefed is deemed waived.").

Notwithstanding these claims, defendant, in his certification, continues to dispute the State's proofs with respect to the first-degree distribution charge. Indeed, he explained his "reason for filing this claim for relief [was] based on the fact that there[] was only a very small amount of [cocaine] used to defraud an end buyer" which the "lab test confirmed [by showing] the majority of the package in question was boric acid which is fake [CDS] that looks like cocaine but is worthless and cannot be sold in any market." He also contended the "[five] to [seven] grams that was used to show the end buyer ended up being mix[ed] with one of the kilograms of boric acid" resulting in S-65's positive test for cocaine. Finally, defendant claimed defense counsel failed to review the discovery with him and did not meet with him except for when defendant "retained him as legal counsel" and again "several days before trial."

After considering the parties' submissions and oral arguments, the PCR judge concluded defendant failed to establish a prima facie claim of ineffective assistance of counsel under Strickland and accordingly denied defendant's petition without an evidentiary hearing. In the court's written opinion, it characterized defendant's criticisms of his trial counsel as "buyer's remorse," after choosing to go to trial despite what the court calls the sound, but

10

unsuccessful, trial strategy of arguing he only intended to defraud by selling imitation drugs to avoid conviction on the most serious, first-degree charge.

Further, the judge highlighted defendant's presence at numerous pretrial hearings, at which he made no indication that he was unhappy with his representation. The court also found based on the "happenings at the pre-trial conference and a review of the [p]re-[t]rial memo . . . [d]efendant was well aware of his options."

This appeal followed in which defendant raises the following arguments:

> THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF TRIAL COUNSEL'S INEFFECTIVENESS.
>
> A. Trial Counsel Failed to Consult Adequately with Defendant.
>
> B. Trial Counsel Misadvised Defendant to Proceed to Trial and to Reject the State's Plea Offer.[4]

In point I.A, defendant contends his counsel failed to consult with him, except on two occasions, and even then, his counsel failed to review with him the State's evidence. In point I.B., he maintains counsel's advice to proceed to

---

[4] We have reconstituted defendant's point headings to correspond to the manner in which we address the issues.

trial without, what he argues, a viable defense established a prima facie case of ineffective assistance of counsel warranting an evidentiary hearing. As support, defendant relies on the overall strength of the State's case and counsel's misadvice that the "State could not prove the 'intent' element of the charges," which defendant now characterizes as a "pipe dream."

In response, the State asserts defendant never attested in his petition his trial counsel forced or coerced him to proceed to trial or that he would now accept the previously offered plea. It further argues defendant was fully aware of trial counsel's defense and knowingly chose to go to trial, understanding the risks associated and the imposition of a potentially longer sentence. The State also maintains defendant's "consistent and unwavering assertion of the defense set forth during trial, coupled with his presence during pre-trial motion hearings, convincingly establishes . . . defendant was aware of the evidence against him, and had met with and communicated with his trial counsel regarding trial strategy . . . ." Finally, the State argues even assuming counsel's performance was somehow deficient, defendant failed to establish he was in any way prejudiced.

II.

Because the PCR judge did not hold an evidentiary hearing, we review both the factual inferences drawn by the judge from the record and the judge's legal conclusions de novo. State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020); see also State v. Nash, 212 N.J. 518, 540-41 (2013).

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee that a defendant in a criminal proceeding has the right to the assistance of counsel in his or her defense. The right to counsel includes "the right to the effective assistance of counsel." Nash, 212 N.J. at 541 (quoting Strickland, 466 U.S. at 686).

As noted, in Strickland, the Court established a two-part test to determine whether a defendant has been deprived of the effective assistance of counsel. 466 U.S. at 687; Fritz, 105 N.J. at 58. Under the first prong, it must be demonstrated that counsel's handling of the matter "fell below an objective standard of reasonableness" and "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687-88. However, when considering a defendant's proofs, a court must show "extreme deference" in assessing defense counsel's performance, Fritz, 105 N.J. at 52, and "indulge a strong presumption

13

that [it] falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689. To establish prejudice under the second prong, a defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

"With respect to both prongs of the Strickland test, a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving his or her right to relief by a preponderance of the evidence." State v. Gaitan, 299 N.J. 339, 350 (2012); see also State v. Goodwin, 173 N.J. 583, 593 (2002). A defendant must "do more than make bald assertions that [they were] denied the effective assistance of counsel" to establish a prima facie claim. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Defendant's failure to satisfy either prong of the Strickland standard requires the denial of a PCR petition. Nash, 212 N.J. at 542; Fritz, 105 N.J. at 52.

We agree with the PCR judge's determination that defendant failed to establish counsel was constitutionally deficient under Strickland. We reject defendant's bald assertions in point I.A, that his trial counsel only met with him on two occasions – when he was retained and two days before trial – and failed

14

to reveal the State's discovery or its evidence against him, for two independent reasons.

First and foremost, defendant's unsupported statements are utterly belied by the record of the trial court proceedings, which reveal defendant appeared in court with respect to significant pretrial hearings. Indeed, it is undisputed defendant was present on February 24, 2017, and March 13, 2018, when the court considered defendant's motion to retest the drug evidence and his counsel's subsequent motion for a quantitative analysis. And, as noted, he appeared and was questioned directly by the court at the October 23, 2017 status conference when the court confirmed his desire to reject the State's plea offer, after being advised that if convicted he could be sentenced to a significant custodial term. He was clearly well aware of the charges and the State's proofs based on his presence at those proceedings, as well as the circumstances of his arrest where he attempted to flee from the scene and discard at least some of the seized physical evidence.

Second, defendant's certification fails to specify how his counsel's alleged failures affected the outcome of the trial. As discussed, supra, in order for defendant to obtain relief based on ineffective assistance grounds, he must establish not only the particular manner in which counsel's performance was

deficient, but also that the deficiency prejudiced his right to a fair trial. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58. As our Supreme Court has held, "it is not the frequency of consultation that reveals whether a defendant has been effectively denied effective legal assistance. Rather, the proper inquiry is whether as a result of that consultation, counsel was able [to] properly[] investigate the case and develop a reasonable defense." State v. Savage, 120 N.J. 594, 617 (1990).

We also reject defendant's arguments in point I.B that the court erred in denying his petition because his trial counsel incorrectly advised him to reject the State's plea offer and proceed to trial. On this point, defendant correctly notes "[a] defendant can challenge the voluntary, knowing, intelligent nature of his plea by showing that the advice he received from counsel was not within the standards governing a reasonably competent attorney." State v. Lasane, 371 N.J. Super. 151, 163 (App. Div. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 56–57 (1985)). Similarly, a defendant can challenge his rejection of a plea offer by claiming he was not afforded "'the effective assistance of competent counsel.'" Lafler v. Cooper, 566 U.S. 156, 162 (2012) (citation omitted).

We examine defendant's allegations considering the record and "viewing the facts alleged in the light most favorable to the defendant." See R. 3:22–

16

10(b). Based on the above-described deficiencies and other statements in defendant's certification, we are satisfied he failed to establish prejudice as required by Lafler, and his reliance on that case is therefore misplaced. In Lafler, "all parties agree[d] the performance of [defendant's] counsel was deficient when he advised [defendant] to reject the plea offer on the grounds he could not be convicted at trial." 566 U.S. at 163. Further, it was "conceded" defendant's decision to reject the offer and go to trial "was the result of ineffective assistance during the plea negotiation process." Id. at 166.

Lafler nevertheless required that a defendant must still show "a reasonable probability that but for counsel's errors he would have accepted the plea." Id. at 171. Specifically, the court held that where deficient advice leads to the rejection of a plea offer,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.
>
> [Id. at 164.]

Notably, defendant does not specifically attest he would have pled guilty to the first-degree charges (or any of the charges), nor does he unequivocally state he would have accepted the State's offer of an eleven-year custodial term.[5] Instead, he only vaguely asserts he told his counsel he "very much wanted the matter resolved" and denies that he was informed of a plea offer, contrary to the record, and continues to advance the arguments his counsel presented at trial; namely, that defendant did not intend to distribute cocaine, as evidenced by the four kilos of boric acid and the five to seven grams of cocaine he intended to "show the end buyer ended up being mixed" with S-65.

As defendant cannot show prejudice, we "need not determine whether counsel's performance was deficient" on this point. State v. Marshall, 148 N.J. 89, 261 (1997) (quoting Strickland, 466 U.S. at 697). Even if we were to address the issue, we are satisfied defendant failed to establish his counsel's performance was constitutionally deficient.

In this regard, in the face of the State's proofs, defense counsel zealously advocated on defendant's behalf by filing numerous pre-trial motions concerning retesting and suppressing evidence, advancing a defense at trial consistent with

---

[5]  In its merits brief, the State represents the plea offer required defendant to plead guilty to the first-degree offense, an assertion defendant does not contest.

defendant's continued claims as revealed in his petition, and by filing post-trial motions to correct perceived errors by the trial court. Finally, we note defendant's belated claims his counsel's defenses attempting to negate his intent were a "pipe dream" failed to acknowledge the jury's acquittal of defendant on the charge of second-degree possession of cocaine with intent to distribute within 500 feet of a public park.

In the final analysis, we are satisfied from our review of the record defendant failed to establish a prima facie showing of ineffectiveness of trial counsel within the Strickland test. Accordingly, the PCR court correctly concluded that an evidentiary hearing was not warranted. See State v. Preciose, 129 N.J. 451, 462-63 (1992).

To the extent we have not addressed any of defendant's remaining arguments it is because we have determined they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3730-22