# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1597-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JESUS DELGADO, a/k/a
JESUS MANUEL DELGADO,
HOWER D. MALAVE, and
HOARO D. MALAVA,

    Defendant-Appellant.

_____

Submitted November 5, 2025 – Decided November 18, 2025

Before Judges Firko and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 10-12-1274.

Jennifer N. Sellitti, Public Defender, attorney for appellant (James D. O'Kelly, Designated Counsel, on the briefs).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Timothy P. Kerrigan, Jr., Chief Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jesus Delgado appeals from a December 14, 2023 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

The State alleged that "on or about September 4 [or 5], 2010," in Paterson, defendant fondled the breasts of his eleven-year-old stepdaughter, J.S., over her clothes.[1] At the time, defendant's wife, J.S.'s biological mother, was in the hospital recovering from a heart attack. J.S. was in her bedroom on the third floor of their residence and her sister, N.S., was on the first floor. Defendant entered J.S.'s bedroom, closed the door, and turned off the light.

Defendant asked J.S. if she wanted $100. J.S. responded that she did not, and defendant threw the money on her bed, approached her from behind, and rubbed her breasts over her clothes with his hands. J.S. attempted to push him away, but was unsuccessful, and when she yelled for him to stop, defendant covered her mouth with his hand. N.S. heard J.S. scream and went to J.S.'s

---

[1] We use initials to protect the identity of a child victim of sexual assault or abuse. R. 1:38-3(c)(9).

bedroom. When N.S. entered the room, she saw defendant fondling J.S.'s breasts. Defendant then left the residence.

The girls told their mother what happened, and she called the Paterson Police Department. On September 7, law enforcement interviewed defendant. He admitted he "hit [J.S.] on her breast" but claimed he did so accidentally.

On December 20, 2010, defendant was indicted by a Passaic County grand jury and charged with second-degree sexual assault, N.J.S.A. 2C:14-2(b), and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). On June 27, 2011, defendant pleaded guilty to second-degree endangering the welfare of a child in exchange for the State's agreement to dismiss all other charges and recommend a sentence of five years in prison, subject to Megan's Law, N.J.S.A. 2C:7-1 to -23, and parole supervision for life (PSL), N.J.S.A. 2C:43-6.4.

At the plea hearing, defendant testified he reviewed each question and answer on the plea forms with defense counsel, and the answers were true and accurate. He understood he was waiving his right to a trial by jury and the other rights enumerated on the plea forms. Defendant testified he understood he was pleading guilty to second-degree endangering the welfare of a child, and that he would be sentenced to a maximum of "five years flat in New Jersey State Prison." He understood he would be subject to Megan's Law reporting

A-1597-23

requirements "perhaps for the rest of [his] life." He also understood he would be sentenced to PSL and "might be on [PSL] for the rest of [his] life."

Defense counsel advised the court defendant "had one question" on the PSL plea form. It "was really kind of bothering him, which is the third page, which says that he has to report to the Division of Parole, when he[ is] released, in Paterson" because he "is from Trenton." The court explained that upon his release from prison, he would be permitted to report to a parole office closer to his home. Defendant said he understood. Defendant confirmed he did not have any "questions other than [the] one that [he] raised" and was "satisfied with [his] attorney."

When defense counsel initially attempted to elicit a factual basis for the plea, defendant admitted he intentionally touched J.S.'s breasts, but then also stated the girls "were acting up that day" and he "just pushed and touched her breast." After a short recess during which counsel met privately with defendant, the hearing continued.

Defendant testified he was alone with J.S. on September 4, 2010, and "something happened with [him] and [J.S.'s] breasts." The testimony continued

> [Defense counsel]: And tell us what happened.
>
> . . .

A-1597-23

[Defendant]:  Well yeah, what happened that day . . . I touched her breast, do you know what I mean[?]

[Defense counsel]:  And why did you touch her breast?

[Defendant]: . . . [H]ow you say that? For the gratification?

[Defense Counsel]:  I know it's a big word . . . and the word the prosecutor used is gratification[.]

[Defendant]: Gratification.

[Defense Counsel]:  [W]hat that means is you did it . . . for your own pleasure, is that right?

[Defendant]: Yes.

[The Court]:  All right, sir. You acknowledge that by touching her breast that . . . [it] constituted sexual conduct on your part?

[Defendant]:  Yes.

 . . .

[The Court]:  And when you did touch her breast, you did it for your own sexual pleasure?

[Defendant]:  Yes.

 . . .

[The State]:  [N.S.] did see you touch [J.S.] on the breasts?

[Defendant]:  Yes.

A-1597-23

[The State]: Okay. [N.S.] saw?

[Defendant]: Yes.

. . .

[The State]: Did you by accident touch her on her breast, or did you want to touch her on the breast? Which one was it?

[Defendant]: Well yes, I touched her on the breast.

[The State]: Did you want to touch her on her breast or was it by accident you touched her on the breast?

[Defendant]: I wanted to. I wanted to touch . . .

[The State]: So you wanted to touch her on the breast, correct?

[Defendant]: Yes.

[The State]: And you did that because you wanted to feel good inside. You wanted pleasure, is that correct?

[Defendant]: Yes.

Based on defendant's testimony, the court found defendant "freely and voluntarily entered [his] guilty plea . . . because he actually is guilty and he did provide an adequate factual basis." On July 13, 2011, defendant, who was then forty years old, was interviewed for an Adult Presentence Report (PSR). He reported that he was born in Puerto Rico and moved to New York when he was

6

ten years old. He completed ninth grade in Monroe, New York and stated he was able to "read[] and write[] in English."

On September 16, 2011, defendant was sentenced in accordance with the plea agreement. Defendant reaffirmed that the factual basis he gave at the plea hearing was true, he pleaded guilty voluntarily, and wanted "to go ahead with the plea and . . . be sentenced." That same day, defendant signed the "Notice of Appeal Rights and Time to File a Petition for [PCR]." That form stated:

> Time Limits to File a Petition for [PCR]. I understand that I have [five] years from today's date to file a petition for [PCR], unless an exception to this general rule applies, as set forth in [Rule] 3:22-12.

Defendant certified that defense counsel "reviewed th[e] [f]orm with [him]." A conforming judgment of conviction was entered on September 23, 2011. Defendant did not file a direct appeal.

II.

On November 7, 2022, defendant filed a pro se petition for PCR. He claimed "amendment[s] [number six and fourteen] were violated" because his "attorney never gave [him] the opportunity to confront [his] witness, he just told [him] to agree and sign w[h]ere indicated [and] also scared [him]" against "taking the case to trial by stating that no one wins those cases in court." He also asserted defense counsel "failed to advise that [he] can come back to court

7

for PCR based on the [psychological] evaluation done in [the Avenel Diagnostic and Treatment Center]."

Defendant claimed he "was not told about the time limit of a PCR," he "did not understand penal consequences[,]" and defense counsel did not consider that he cannot "read or write." He argued defense counsel was "not doing his job [and] standing up for [him]," gave "no consideration of no previous history in the matter [he was] accused of," "did not take his time to build the case," and "failed to properly investigate."

After PCR counsel was appointed, defendant filed an amended petition for PCR. He asserted "[a]t the time" he was represented by defense counsel "in this case, [he] did not read and write English" and "relied upon [defense counsel] to know what to do to protect [his] rights." He claims defense counsel told defendant he would be "locked up for a short period of time, a year, and then it would be all done."

Defense counsel "had [him] sign some forms that he talked to [him] about" but he "[did] not know whether [defense counsel] read [him] everything, or just skipped around parts of it." "When [he] recently started to question the [PSL], and other issues about [his] case, [he] learned that [he] had signed a form at the time of [his] plea which stated that [he] had only five years in which to file for

[PCR]." Defendant argued he "has no memory of being asked certain questions, or being advised of specific issues, such as the five-year deadline for the filing of a petition for [PCR]."

Defendant claimed, at the plea hearing, defense counsel "told [him] what [he] had to say, but [he] did[ not] believe that was what [he] had done." Defendant and defense counsel "went over the plea forms" and they "discussed [his] answers to what [defense counsel] read [him]" but he does not "know then or now whether [defense counsel] read every question to [him], or whether what [he] answered was accurately written on the plea form."

On December 14, 2023, following oral argument, the PCR court entered an order denying defendant's petition supported by an oral opinion. The court concluded defendant's petition for PCR was time-barred pursuant to Rule 3:22-12(a)(1). The court "recognize[d] that it is part of the process in . . . New Jersey to advise defendants of their appeal rights and their right[] to file PCRs" and defendant was aware of that deadline based on "more than just this case" it was "certainly more than this one instance."

The PCR court determined defendant failed to establish excusable neglect, as "[defendant], based upon [the court's] observations [at the PCR hearing] and listening to [the] record in the past, understood everything and then as far as a

fundamental injustice . . . a plea was taken, the factual basis was laid[,]" and defendant "acknowledged the crime." This appeal followed.

III.

On appeal, defendant raises the following points for our consideration.

POINT I

THE STATE'S RELIANCE ON TWO SENTENCES FROM AN UNPUBLISHED OPINION, DECIDED AFTER THE FILING OF DEFENDANT'S INITIAL MERITS BRIEF, WITHOUT ANY MEANINGFUL ANALYSIS, SHOULD NOT DICTATE WHETHER THIS COURT SHOULD EXTEND THE RULE OF STATE V. FLETCHER[2] TO INSTANCES WHERE A SENTENCING COURT FAILS TO INFORM A DEFENDANT OF THE TIME PERIOD FOR FILING A PCR CONVICTION AS REQUIRED BY RULE 3:21-4(i).

POINT II

THE STATE ASKS THIS PANEL TO ENDORSE A PCR COURT'S USE OF PURE SPECULATION AS A VALID GROUND TO DENY A PCR PETITION.

POINT III

THE PCR COURT''S CONCLUSION THAT DEFENDANT MUST HAVE UNDERSTOOD WHAT HAPPENED IN PREVIOUS CASES WITHOUT A SPANISH INTERPRETER BECAUSE DEFENDANT APPEARED TO COMPREHEND THE PROCEEDINGS WITH THE AID OF A SPANISH

---

[2] State v. Fletcher, 174 N.J. Super. 609 (App. Div. 1980).

A-1597-23

INTERPRETER WAS ERRONEOUS AND SHOULD BE REJECTED.

POINT IV

IF THE PCR COURT HAD CONSIDERED AND RESOLVED DEFENDANT'S PRO SE CLAIM CONCERNING THE PLEA COURT'S FAILURE TO COMPLY WITH RULE 3:9-2, THE COURT LIKELY WOULD HAVE CONCLUDED THAT THE PLEA COURT FAILED TO ADVISE DEFENDANT OF THE FUNDAMENTAL RIGHTS HE WAS WAIVING BY PLEADING GUILTY.

IV.

"Where, as here, the PCR court has not conducted an evidentiary hearing, we review its legal and factual determinations de novo." State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020) (citing State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018)). Based on our de novo review, we are satisfied the court correctly determined defendant's petition was time-barred.

Defendant was sentenced on September 23, 2011. He filed his PCR petition on November 7, 2022, more than eleven years later. In State v. Brewster, 429 N.J. Super. 387 (App. Div. 2013), we explained:

> [Rule] 3:22-12(a)(1) sets a five-year time limitation for the filing of a PCR petition, unless the petition itself shows excusable neglect for the late filing and fundamental injustice if defendant's claims are not considered on their merits. By its subsection (a)(2), [Rule] 3:22-12 allows an additional one-year limitation

11

period if the courts recognize a new constitutional right or defendant discovers a previously unknown factual predicate justifying relief from the conviction.

[Id. at 398.]

In State v. McQuaid, 147 N.J. 464 (1997), our Supreme Court "emphasized the important policy underlying the requirement that PCR petitions be timely filed":

> There are good reasons for [Rule 3:22-12]. As time passes after conviction, the difficulties associated with a fair and accurate reassessment of the critical events multiply. Achieving "justice" years after the fact may be more an illusory temptation than a plausibly attainable goal when memories have dimmed, witnesses have died or disappeared, and evidence is lost or unattainable. . . . Moreover, the Rule serves to respect the need for achieving finality of judgments and to allay the uncertainty associated with an unlimited possibility of relitigation. The Rule therefore strongly encourages those believing they have grounds for [PCR] to bring their claims swiftly, and discourages them from sitting on their rights until it is too late for a court to render justice.
>
> [Id. at 485 (alterations in original) (quoting State v. Mitchell, 126 N.J. 565, 575-76 (1992)).]

Although "a court may relax the time bar if the defendant alleges facts demonstrating that the delay was due to the defendant's excusable neglect or if the 'interests of justice' demand it[,]" State v. Goodwin, 173 N.J. 583, 594 (2002) (quoting Mitchell, 126 N.J. at 576), "a court should only relax the bar of [Rule]

3:22-12 under exceptional circumstances." State v. Afanador, 151 N.J. 41, 52 (1997). A "court 'should consider the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an "injustice" sufficient to relax the time limits.'" Goodwin, 173 N.J. at 594 (quoting Afanador, 151 N.J. at 52); see also State v. Walker, 478 N.J. Super. 553, 560 (App. Div. 2024). "Absent compelling, extenuating circumstances, the burden to justify filing a petition after the five-year period will increase with the extent of the delay" because "[a]s time passes, justice becomes more elusive and the necessity for preserving finality and certainty of judgments increases." Afanador, 151 N.J. at 52.

"Mindful of these policy considerations," in State v. Brown, 455 N.J. Super. 460 (App. Div. 2018), we held:

> [W]hen a first PCR petition shows it was filed more than five years after the date of entry of the judgment of conviction, . . . a PCR judge has an independent, non-delegable duty to question the timeliness of the petition, and to require that defendant submit competent evidence to satisfy the standards for relaxing the Rule's time restrictions pursuant to Rule 3:22-12. Absent sufficient competent evidence to satisfy this standard, the court does not have the authority to review the merits of the claim.
>
> [Id. at 470.]

We are unpersuaded by defendant's claim that the court failed to inform him of the five-year time limitation for the filing of a petition for PCR. At the conclusion of the sentencing hearing, the sentencing judge confirmed defendant executed the appeal rights form. That form clearly stated that a petition for PCR must be filed within five years and defendant signed the form certifying he understood that limitation. Therefore, the sentencing judge satisfied his obligation to "inform the defendant of the time limitations in which to file petitions for [PCR]" pursuant to Rule 3:21-4(i).

Defendant's claim that he was not aware of that limitation because he could not read or write English at the time of the sentencing hearing is not convincing. In fact, that claim is directly contradicted by the PSR, which states defendant reported he had lived in the United States for approximately thirty years as of 2011, completed ninth grade in New York, and did "read[] and write[] in English." His claim is also directly contradicted by his testimony at the plea hearing that he was able to review each question and answer on the plea forms with defense counsel, and verified the answers on the plea forms were true and accurate. The only evidence that defendant could not read or write English in 2011 is his own self-serving claim made in support of his 2022 petition for PCR.

A-1597-23

Defendant has also failed to set forth any basis to find excusable neglect to justify the eleven-year delay in filing his petition. His only explanation for the delay is that he "recently started to question the [PSL], and other issues about [his] case" and "learned that [he] had signed" the appeal rights form. He does not contend the delay was caused by the fact that he allegedly was not advised of the five-year deadline or that he would have timely filed the petition if he knew. He admits he only "recently started to question" the PSL and other issues.

Defendant's failure to file his petition for eleven years because he only "recently" decided to do so is not sufficient to establish excusable neglect. That is particularly true where, as here, the length of the delay is extraordinary, and, as a result of the passage of time, "achieving 'justice' years after the fact may be more an illusory temptation than a plausibly attainable goal." McQuaid, 147 N.J. at 485.

V.

We are also satisfied there is no basis to find enforcement of the time bar would result in an injustice because defendant's ineffective assistance of counsel claims lack merit. To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong Strickland test showing: (1) "counsel made errors so serious that counsel was not functioning as the 'counsel'

15

guaranteed [to] the defendant by the Sixth Amendment"; and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-prong test). Failure to meet either prong of the Strickland/Fritz test results in the denial of a petition for PCR. State v. Parker, 212 N.J. 269, 280 (2012).

The defendant must establish, by a preponderance of the credible evidence, that they are entitled to the requested relief. State v. Nash, 212 N.J. 518, 541 (2013) (citing State v. Preciose, 129 N.J. 451, 459 (1992)). To sustain that burden, the defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision." Mitchell, 126 N.J. at 579. Defendants must do more than make "bald assertions" of ineffective assistance. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

Under the first prong, counsel's representation must be objectively unreasonable. State v. Pierre, 223 N.J. 560, 578 (2015). "The test is not whether defense counsel could have done better, but whether [they] met the constitutional threshold for effectiveness." Nash, 212 N.J. at 543. "The failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel." State v. Worlock, 117 N.J. 596, 625 (1990).

Counsel may be ineffective for "fail[ing] to conduct an adequate pre-trial investigation."  State v. Porter, 216 N.J. 343, 352 (2013) (citing Preciose, 129 N.J. at 464).  Where a defendant alleges counsel rendered ineffective assistance by "inadequately investigat[ing their] case, [the defendant] must assert the facts that an investigation would have revealed, supported by affidavits or certifications."  Id. at 353 (quoting Cummings, 321 N.J. Super. at 170); accord R. 3:22-10(c).

Under the "'second, and far more difficult, prong of the' Strickland standard," State v. Gideon, 244 N.J. 538, 550 (2021) (quoting Preciose, 129 N.J. at 463), a defendant "'must show that the deficient performance prejudiced the defense.'"  State v. O'Neil, 219 N.J. 598, 611 (2014) (quoting Strickland, 466 U.S. at 687).  To establish prejudice, "'[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  Gideon, 244 N.J. at 550-51 (alteration in original) (quoting Strickland, 466 U.S. at 694).

To demonstrate "prejudice after having entered a guilty plea, a defendant must prove 'that there is a reasonable probability that, but for counsel's errors, [he or she] would not have pled guilty and would have insisted on going to trial.'"

State v. Gaitan, 209 N.J. 339, 351 (2012) (quoting State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009)). A defendant must show that, "had he been properly advised, it would have been rational for him to decline the plea offer and insist on going to trial and, in fact, that he probably would have done so[.]" State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011).

We review the PCR court's decision to proceed without an evidentiary hearing for an abuse of discretion. State v. L.G.-M., 462 N.J. Super. 357, 365 (App. Div. 2020). A petitioner is not automatically entitled to an evidentiary hearing. Porter, 216 N.J. at 355. Rule 3:22-10(b) provides a court should hold an evidentiary hearing on a PCR petition only if the defendant establishes a prima facie case in support of PCR, "there are material issues of disputed fact that cannot be resolved by reference to the existing record," and "an evidentiary hearing is necessary to resolve the claims for relief." See also Porter, 216 N.J. at 354.

"A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" Id. at 355 (quoting R. 3:22-10(b)). "[T]o establish a prima facie claim, a petitioner

must do more than make bald assertions that he was denied the effective assistance of counsel." Ibid. (quoting Cummings, 321 N.J. Super. at 170).

We are satisfied defendant failed to satisfy either prong of the Strickland test. Despite defendant's claim that he could not read the plea forms in 2011 and does not know if defense counsel "read [him] everything, or just skipped around parts of it," he has not identified any answers on those forms that were incorrect. Nor has he identified anything he allegedly did not understand on the plea forms that caused him to accept the State's plea order and waive his right to a trial. Defendant must do more than claim he may not have understood something on the plea forms.

His claim that he did not understand the consequences of the plea is directly contradicted by his testimony at the plea hearing. The court reviewed every aspect of the plea and the potential consequences of the plea with defendant, and he testified he understood. Defendant does not identify any aspect of the plea or its consequences that he did not understand.

Defendant's claims that defense counsel "was ineffective," "failed to properly investigate," and "did not take time to build the case" are unconvincing. To establish a claim of ineffective assistance based on failure to conduct adequate pretrial investigation, a defendant "must assert the facts that an

19

investigation would have revealed, supported by affidavits or certifications." Porter, 216 N.J. at 353 (internal quotation marks omitted). Defendant's claims are nothing more than bald assertions of ineffective assistance. He does not identify anything defense counsel failed to investigate or any facts such an investigation would have revealed.

Lastly, defendant's claim that he was forced to plead guilty is unpersuasive. Defendant testified he was entering the plea voluntarily and provided a factual basis for his plea at the plea hearing. He reaffirmed his plea at the sentencing hearing and again testified he pleaded guilty voluntarily. There is no basis to find his plea was not knowing and voluntary.

We are satisfied the PCR court correctly determined defendant's petition for PCR was time-barred. In addition, defendant did not establish a prima facie case of ineffective assistance. He failed to set forth any meritorious basis to find defense counsel was ineffective or that, but for counsel's alleged errors, he would have rejected the plea offer and insisted on going to trial. The PCR court did not abuse its discretion by denying defendant's request for an evidentiary hearing and properly denied his petition for PCR.

A-1597-23

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division