**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4090-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JACOB LLERA,

    Defendant-Appellant.

_____

Submitted February 3, 2026 – Decided May 28, 2026

Before Judges Susswein and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 17-03-0637.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Louis H. Miron, Designated Counsel, on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jacob Llera appeals the June 26, 2024, Law Division order denying his petition for post-conviction relief (PCR). In October 2018 he was tried and convicted of murder and related weapons offenses. He contends that his trial counsel rendered ineffective assistance. After reviewing the record in light of the governing legal principles, we affirm substantially for the reasons set forth by the PCR court.[1]

## I.

We discern the following procedural history and pertinent facts from the record, including our prior opinion on defendant's direct appeal. In March 2017, defendant was charged by indictment with first-degree murder, N.J.S.A. 2C:11-3(a)(1)(2); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a). A jury trial was held in October 2018 at which the State presented the following facts:

On September 8, 2015, at approximately 8:20 p.m., Camden County Police Officer Nicole Berry was parked in her police vehicle at the intersection of Broadway and Stevens Street in Camden when she heard gunshots. She then

---

[1] We note the same judge presided over the jury trial, the original sentencing proceeding, the re-sentencing hearing on remand, and the PCR proceedings.

saw a man running towards her and collapsing. He eventually succumbed to two gunshot wounds. The victim was later identified as Saadiq Coleman.

A local Camden resident walking in the area on the night of the shooting testified that he saw people running down Broadway including an individual wearing white pants and a darker colored shirt. The man took his shirt off as he ran across Broadway. Niurka Suriel, one of defendant's sisters, testified that she saw defendant on the night of the shooting wearing white pants and no shirt.

Camden County Prosecutor's Office (CCPO) Detective Michael Rhoads obtained surveillance video footage from several nearby locations. He created a composite video which was released to the public on September 9—the day after the shooting—in an effort to solicit assistance in identifying the gunman.

Also on September 9, police interviewed Matthew Brown, another witness who came forward alleging he had observed the shooting. Brown told police that the shooter had tattoos on both arms and was wearing a white shirt with cargo shorts. He identified the shooter as a man named Darion. Brown also relayed to police that he is color blind.

A-4090-23

Following the public release of the video, defendant's other sister, Leila Llera,[2] contacted the CCPO. Police interviewed her on September 10. She told Detective Rhoads that she witnessed the shooting and saw defendant shoot the victim and flee the area. She also told police that she saw defendant with a handgun the evening of the shooting.

At trial, Leila testified that she could not recall her previous statements to police. After conducting a Gross[3] hearing, the trial court found Leila's memory lapses to be feigned and permitted the video of her statements to police to be played for the jury.

Detective Rhoads testified that defendant contacted him on September 12, 2015, after hearing from his family that he appeared in the surveillance footage of the incident released to the public. Defendant denied committing the shooting but told police he was planning on turning himself in. Defendant was arrested in Philadelphia on September 16, 2015.

At trial, a video recording of defendant's September 16, 2015, stationhouse interrogation was played for the jury. Defendant told police that

---

[2] Because she shares the same surname with defendant, to avoid confusion we refer to her as Leila. We mean no disrespect in doing so.

[3] State v. Gross, 121 N.J. 1 (1990).

A-4090-23

he was meeting the victim to obtain marijuana from him. Shortly after receiving the drugs from the victim, defendant stated that he heard gunshots, ran from the scene, and saw a person he believed to be the shooter dressed in all black emerge from the bushes further down Broadway. During the interrogation, police told defendant that multiple people including his sister, Leila, and Siefuddin Holland had identified him as the shooter.

Defendant testified at trial in his own defense. He denied shooting Coleman and testified that he was not looking in the victim's direction when he heard the shots fired and fled the scene because he feared for his life. He offered three potential shooters: an individual wearing all black, a man wearing white pants and a blue shirt who had been walking with Coleman and Holland, and a third man wearing a white t-shirt and riding a bike. Defendant also testified that Holland was in possession of a handgun on the night of the shooting and appeared "mad at something."

The jury returned a guilty verdict on all three counts. On January 3, 2019, the court sentenced defendant on the murder conviction to forty years in prison, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. The judge merged the conviction for possession of a weapon for an unlawful purpose with the murder conviction. With respect to the conviction for unlawful possession of a weapon,

A-4090-23

the court imposed a consecutive term of seven years with three and a half years of parole ineligibility.

In January 2019, defendant appealed his convictions and sentence, claiming that the trial court erred: (1) by failing to provide jury instructions concerning eyewitness identifications; (2) by allowing the jury to view a recording of defendant's custodial interrogation that included a remark by the interrogating officer that a non-testifying witness (Holland) had identified defendant as the shooter; and (3) by failing to account for a new statutory mitigating factor and by imposing consecutive sentences on the murder and handgun possession convictions. On August 25, 2021, we affirmed defendant's convictions but remanded the matter for reconsideration of the overall fairness of the consecutive sentence in light of State v. Torres, 246 N.J. 246 (2021). See State v. Llera, No. A-2131-18 (App. Div. Aug. 25, 2021). The New Jersey Supreme Court denied certification "without prejudice to defendant raising claims in a petition for post-conviction relief." State v. Llera, 249 N.J. 58 (2021).

On remand, the trial court heard oral argument and on October 7, 2021, issued an order finding that the imposition of consecutive sentences was fair and explaining its reasons for that finding.

In August 2022, defendant filed a self-represented petition for post-conviction relief (PCR), which was later amended by his appointed counsel. In his PCR petition, defendant raised the following contentions: (1) trial counsel was ineffective for failing to call Brown as a witness; (2) trial counsel was ineffective for failing to object to hearsay statements attributed to Holland identifying defendant as the shooter; (3) trial counsel was ineffective for failing to request a specific identification instruction relating to Leila's testimony; and (4) trial counsel was ineffective for failing to appeal defendant's resentencing. The PCR court granted an evidentiary hearing solely on the issue of whether defendant received ineffective assistance of counsel relating to informing defendant of his right to appeal following the remand for his sentencing.

The limited evidentiary hearing and oral argument on all issues was held on June 26, 2024. That same day, the court rendered an oral decision accompanied by a written order granting in part and denying in part defendant's requested relief.

Regarding defendant's contention that defense counsel was ineffective for failing to call Brown as a witness, the court found that Brown was not identified as an alibi witness, gave an unsworn statement to police, and admitted that he was color blind. The court stressed that defendant did not submit a certification

7

or affidavit from Brown identifying the specific facts he would have testified to at trial. The court determined that defendant's argument regarding Brown's testimony was a "bald assertion." Moreover, the court determined that the decision not to call Brown as a trial witness was a strategy employed by defense counsel in light of Brown's reported hostility to the defense and the fact that Brown never said that he did not see defendant during the incident. Accordingly, the court held that defendant failed to establish a prima facie case in support of PCR on the claim that his counsel was ineffective for failing to call Brown as a witness.

Regarding defendant's second PCR claim—that his counsel was ineffective for failing to object to hearsay statements contained in the police interrogation video played for the jury—the court noted that this issue was addressed in our opinion on defendant's direct appeal and that we held that the error in permitting the jury to hear the statements was harmless beyond a reasonable doubt. Accordingly, the PCR court concluded that defendant did not establish a prima facie case in support of PCR on this issue, explaining:

> Here, the Appellate Division made it abundantly clear that trial counsel's performance was a sound strategy and reasonable, professional judgment. I further find that [PCR] counsel fails to show how the outcome of the proceeding would have been different, other than stating that the [d]efendant's conviction should be

reversed based on trial counsel's errors. I find that the Appellate Division already found that this error was harmless beyond a reasonable doubt and that trial counsel used trial strategy. I find that PCR counsel has not met his burden. He has not shown the [c]ourt how trial counsel is ineffective by allowing that testimony.

With respect to defendant's claim that trial counsel was ineffective for failing to request a jury charge explaining the risk of eyewitness misidentification, the PCR court found that such a charge would have confused the jury, noting the real issue was not misidentification by defendant's own sister but rather her credibility. Moreover, the PCR court noted that we considered this issue on direct appeal and found that the identification was not a key issue in this case considering defendant placed himself at the scene. Thus, the PCR court found that defendant failed to establish a prima facie case in support of PCR on this issue.

The PCR court also considered defendant's contention that his trial counsel was ineffective for failing to impeach his sister, Leila. The court determined that defendant's "blanket statement that trial counsel should have impeached [Leila] at trial" was insufficient to find that trial counsel was ineffective.

Finally, the PCR court addressed defendant's argument that his counsel was ineffective in failing to appeal the outcome of the resentencing proceeding.

9

Defendant's trial counsel testified at the hearing that he did not discuss defendant's appeal rights with him based on the limited scope of the remand. The PCR court found that the failure to appeal was an inadvertent result of the COVID-19 pandemic and the use of Zoom for many proceedings. In the interest of justice, the PCR court granted defendant's relief with respect to this issue and permitted him to appeal his resentencing within forty-five days of the PCR court's hearing.[4]

This appeal follows. Defendant raises the following contentions for our consideration:[5]

> POINT I
> THE PCR COURT ERRED IN RULING THAT DEFENDANT RECEIVED THE EFFECTIVE ASSISTANCE OF COMPETENT TRIAL COUNSEL WHERE COUNSEL FAILED TO CALL A MATERIAL WITNESS AT TRIAL DESPITE THE FACT THAT THE WITNESS PROVIDED EXONERATING STATEMENTS TO THE POLICE DURING THEIR INVESTIGATION

---

[4] The State has not cross-appealed that decision by the PCR court.

[5] We note that defendant on appeal does not raise every issue that was raised to the PCR court. We confine our review to the issues discussed in defendant's appeal brief. "Generally, an issue not briefed on appeal is deemed waived." New Jersey Div. of Child Prot. & Permanency v. A.D., 455 N.J. Super. 144, 163 (App. Div. 2018).

A-4090-23

POINT II

THE PCR COURT ERRED IN RULING THAT DEFENDANT RECEIVED THE EFFECTIVE ASSISTANCE OF COMPETENT TRIAL COUNSEL WHERE COUNSEL FAILED TO OBJECT TO THE PLAYING OF THE UNREDACTED PORTION OF THE VIDEO RECORDING OF THE DEFENDANT'S INTERVIEW THAT CONTAINED A FALSE HEARSAY STATEMENT ABOUT DEFENDANT'S ALLEGED INVOLVEMENT WITH THE MURDER ALLEGEDLY MADE BY A WITNESS WHO WAS UNAVAILABLE TO TESTIFY AT TRIAL

POINT III

THE PCR COURT ABUSED ITS DISCRETION BY FAILING TO CONDUCT AN EVIDENTIARY HEARING TO ADDRESS DEFENDANT'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS CONCERNING COUNSEL'S FAILURE TO CALL BROWN AS A WITNESS AND TO OBJECT TO THE PLAYING OF RHOADS' FABRICATED HEARSAY STATEMENT CONCERNING HOLLAND'S IDENTIFYING DEFENDANT AS COLEMAN'S SHOOTER

II.

We begin our analysis by briefly acknowledging the legal principles governing this appeal. Generally, appellate review "of a PCR court's factual findings is 'necessarily deferential.'" State v. Hernandez-Peralta, 261 N.J. 231, 246 (2025) (quoting State v. Nash, 212 N.J. 518, 540 (2013)). However, appellate courts review a PCR court's legal conclusions de novo. State v. Harris,

11

181 N.J. 391, 415-16 (2004). Furthermore, when the PCR court does not hold an evidentiary hearing, review of both the factual inferences drawn from the record and any legal conclusions is de novo. State v. Balbosa, 481 N.J. Super. 497, 519 (App. Div. 2025). See also State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014); State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020). When applying such de novo review, appellate courts "view the facts in the light most favorable to the defendant." State v. Jones, 219 N.J. 298, 311 (2014).

A defendant alleging ineffective assistance of counsel must satisfy both prongs of the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984), which was adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42 (1987). "First, the defendant must show that counsel's performance was deficient." Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 52. Second, the defendant must show that counsel's "deficient performance prejudiced the defense." Strickland, 466 U.S. at 687.

To meet the first prong of the Strickland/Fritz test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid. Counsel's performance is held to a standard of "reasonableness under prevailing

12

professional norms"; thus, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also State v. Marshall, 148 N.J. 89, 156-57 (1997).

The second Strickland prong requires that defendant show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Stated another way, counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different if counsel had not made the errors. Id. at 694.

Short of obtaining the relief of a new trial, a defendant may demonstrate that an evidentiary hearing is warranted to develop the factual record in connection with an ineffective assistance claim. State v. Preciose, 129 N.J. 451, 462-63 (1992). A PCR petitioner is not automatically entitled to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rule 3:22-10(b) provides in pertinent part,

> A defendant shall be entitled to an evidentiary hearing only upon the establishment of a prima facie case in support of [PCR], a determination by the court that there are material issues of disputed fact that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief.

A-4090-23

With respect to the first of these three requirements, "[a] prima facie case is established when a defendant demonstrates 'a reasonable likelihood that [their] claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" State v. Porter, 216 N.J. 343, 355 (2013) (quoting R. 3:22-10(b)). "[A] petitioner must do more than make bald assertions that he was denied the effective assistance of counsel." Ibid. (quoting Cummings, 321 N.J. Super. at 170). "[V]ague, conclusory, or speculative" allegations are insufficient to warrant an evidentiary hearing. Ibid. (quoting Marshall, 148 N.J. at 158). "Any factual assertion that provides the predicate for a claim of relief must be made by an affidavit or certification pursuant to Rule 1:4-4 and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing." R. 3:22-10(c).

## III.

We first address defendant's contention that the PCR court erred in finding that defense counsel made a strategic decision not to call Brown as a witness, in the absence of any direct evidence from counsel that he did in fact make such a strategic election. "Determining which witnesses to call to the stand is one of the most difficult strategic decisions that any trial attorney must confront." State v. Arthur, 184 N.J. 307, 320-21 (2005). As our Supreme Court explained,

14

A trial attorney must consider what testimony a witness can be expected to give, whether the witness's testimony will be subject to effective impeachment by prior inconsistent statements or other means, whether the witness is likely to contradict the testimony of other witnesses the attorney intends to present and thereby undermine their credibility, whether the trier of fact is likely to find the witness credible, and a variety of other tangible and intangible factors.

[Ibid. (citing Roberto Aron & Jonathan L. Rosner, How to Prepare Witnesses for Trial §§ 2.02-.14 (2d ed. 1998)).]

Importantly, moreover, "[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. State of La., 350 U.S. 91, 101 (1955)).

Here, the PCR court was familiar with the existing record, having presided over the trial, and concluded that defense counsel's failure to call Brown as a witness did not demonstrate ineffective assistance. The court found that Brown never asserted that defendant was not at the scene in his unsworn statement to police. We deem it especially important, as the PCR court aptly noted, that defendant did not submit a certification or affidavit from Brown identifying the

specific facts he would have testified to at trial. The court determined that without knowing what Brown would have testified to at trial, defendant's argument that Brown's testimony would have altered the outcome is a "bald assertion." We agree.

The PCR court also determined that the decision not to call Brown as a trial witness was a strategic choice considering Brown's hostility towards the defense, as detailed in the defense investigation reports, and the fact that Brown never said he did not see defendant during the subject incident. Based on these circumstances, we are not persuaded that Brown would have been a favorable witness for the defense. Furthermore, Brown admitted to police that he was color blind and an active drug user.

Even assuming for the sake of argument that Brown's testimony might have been favorable to the defense, his testimony would most likely have been impeached. In these circumstances, we are satisfied that defense counsel's decision falls within "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Stated another way, defendant has not "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel, 350 U.S. at 101).

16

But even were we to assume for the sake of argument that defendant has established the first prong of the <u>Strickland</u>/<u>Fritz</u> test, defendant cannot meet the second prong. As we have noted, "defendant bears the burden of showing that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" <u>Arthur</u>, 184 N.J. at 319 (quoting <u>Strickland</u>, 466 U.S. at 694). We agree with the PCR court that defendant has not vaulted this threshold. Even if Brown had testified that the shooter had tattoos, it is unlikely that his testimony would have altered the jury's guilty verdict considering that defendant's sister positively identified defendant as the shooter.

IV.

We turn next to defendant's contention that his trial counsel was ineffective for failing to object to hearsay statements contained in the police interrogation video played for the jury. Defendant concedes that this issue was raised and resolved on appeal but argues he is not barred from reasserting it because the New Jersey Supreme Court denied certification of his direct appeal "without prejudice to defendant raising claims in a petition for post-conviction relief." <u>Llera</u>, 249 N.J. at 58. We do not interpret the Supreme Court's

17

certification denial to require that we ignore the procedural rules governing PCR petitions, and in any event, we believe our prior rejection of defendant's substantive argument on the merits is correct.

A PCR petition "is not a substitute for direct appeal; nor is it an opportunity to relitigate a case on the merits." State v. Szemple, 247 N.J. 82, 97 (2021). Accordingly, "a defendant may not employ [PCR] to assert a new claim that could have been raised on direct appeal . . . or to relitigate a claim already decided on the merits." State v. Goodwin, 173 N.J. 583, 593 (2002) (citing R. 3:22-4 and R. 3:22-5).

As a general rule, "a prior adjudication on the merits ordinarily constitutes a procedural bar to the reassertion of the same ground as a basis for post-conviction review." Preciose, 129 N.J. at 476. See also State v. McQuaid, 147 N.J. 464, 483 (1997) (holding "a defendant may not use a petition for [PCR] as an opportunity to relitigate a claim already decided on the merits."). Rule 3:22-5 further explains that "[a] prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding . . . or in any appeal taken from such proceedings." Further, a PCR claim is barred "if the issue raised is identical or

substantially equivalent" to an issue adjudicated previously on direct appeal. State v. Afanador, 151 N.J. 41, 51 (1997) (quoting McQuaid, 147 N.J. at 484).

Here, defendant raises the identical issue previously adjudicated on direct appeal—that trial counsel was ineffective for failing to object to hearsay statements contained in the police interrogation video played for the jury. State v. Llera, No. A-2131-18 (App. Div. Aug. 25, 2021) (slip op. at 14-20). In addressing this issue, we found that the error permitting the jury to hear the statements was "harmless beyond a reasonable doubt." Id. at 20.

Defendant's claim for PCR on this issue is "'identical or substantially equivalent' to the issue already adjudicated on the merits" during the direct appeal. See Afanador, 151 N.J. at 51 (quoting McQuaid, 147 N.J. at 484). But even if we were to disregard the procedural bar and address his contention on the merits, his claim fails because the error in not redacting the hearsay statement was, and remains, harmless beyond a reasonable doubt. This means defendant cannot meet the second prong of the Strickland/Fritz test, which requires him to establish that he was prejudiced by the error. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 52.

A-4090-23

V.

Finally, we address defendant's related contention that the PCR court should have granted him an evidentiary hearing concerning both counsel's failure to call Brown as a witness at trial and counsel's failure to object to Holland's hearsay statement being presented to the jury in the interrogation video. Defendant argues that he presented material issues of disputed facts that could not be resolved from the existing record. We disagree.

As we have already noted,

> A defendant shall be entitled to an evidentiary hearing only upon the establishment of a prima facie case in support of [PCR], a determination by the court that there are material issues of disputed fact that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief.
>
> [R. 3:22-10(b).]

"A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that [their] claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" Porter, 216 N.J. at 355 (quoting R. 3:22-10(b)).

Importantly, the law is well settled that "[a]ny factual assertion that provides the predicate for a claim of relief must be made by an affidavit or

20

certification pursuant to <u>Rule</u> 1:4-4 and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing." <u>R.</u> 3:22-10(c). We agree with the PCR court that in the absence of an affidavit or certification showing what Brown would have testified to at trial, defendant's present allegations are too "vague, conclusory, [and] speculative" to warrant an evidentiary hearing. <u>Marshall</u>, 148 N.J. at 158 (citing <u>Preciose</u>, 129 N.J. at 462-64).

Nor has defendant established that the present record must be supplemented before we can reconsider our prior ruling that the error in not redacting the hearsay statement was harmless beyond a reasonable doubt. Indeed, we cannot imagine—and defendant has not proffered—what additional proofs might be presented at an evidentiary hearing that would be pertinent to the harmless error analysis we have already performed.

In sum, defendant failed to establish a prima facie case in support of PCR concerning his claims that counsel was ineffective by failing to call Brown as a witness and by failing to object to hearsay statements played for the jury in the interrogation video. Even viewing the alleged facts in the light most favorable to the defendant, <u>see</u> <u>Porter</u>, 216 N.J. at 355, defendant's ineffective assistance claims would not succeed on the merits. We reiterate and stress that defendant

21

cannot satisfy the second prong of the <u>Strickland</u>/<u>Fritz</u> test, demonstrating that counsel's errors prejudiced him so that the outcome would have been different in the absence of those errors. <u>Strickland</u>, 466 U.S. at 687; <u>Fritz</u>, 105 N.J. at 52. We add that the PCR court was able to resolve the disputed issues by considering the existing record.

To the extent we have not addressed them, any remaining arguments made by defendant lack sufficient merit to warrant discussion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

22

A-4090-23